Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CARL RAGASA AND KANANI RAGASA,          )   Civil No.
                                        )   03-00540 BMK
            Plaintiffs,                 )
                                        )
      vs.                               )
                                        )
COUNTY OF KAUAI, KAUAI FIRE             )
DEPARTMENT, DAVID SPROAT, ROBERT        )
KADEN, SIDNEY KINI, AND ETHAN SAGE,     )
                                        )
            Defendants.                 )
_____)

DEPOSITION OF MICHAEL SOONG, ESQ.

taken on behalf of Defendant, Ethan Sage, at the Law Offices of Richards & Zenger, 3016 Umi Street, Suites 204 and 211B, Lihue, Hawaii 96766, commencing at 11:45 a.m. on November 8, 2005, pursuant to notice.

TAKEN BEFORE:       M. SHARON SOUZA, CSR NO. 184
                    Notary Public, State of Hawaii

PACIFIC REPORTING SERVICES UNLIMITED
737 Bishop Street, Suite 1470
Honolulu, Hawaii 96813
(808) 524-PRSU

**EXHIBIT I**

DEPOSITION OF MICHAEL SOONG, ESQ.                    NOVEMBER 8, 2005

Page 2

APPEARANCES:

For Plaintiffs     MARK ZENGER, ESQ.
                   Richards & Zenger
                   3016 Umi Street
                   Suites 204 and 211B
                   Lihue, Hawaii 96766

For Defendant      DARWIN L.D. CHING, ESQ.
Ethan Sage         1001 Bishop Street
                   American Savings Tower
                   Suite 1008
                   Honolulu, Hawaii 96813

For Defendants     CORLIS J. CHANG, ESQ.
County of Kauai,   Goodsill Anderson Quinn &
Kauai Fire         Stifel
Department,        1099 Alakea Street
David Sproat,      Suite 1800
Robert Kaden and   Honolulu, Hawaii 96813
Sidney Kini        (By telephone conference)

ALSO PRESENT:      Carl Ragasa

Page 3

INDEX

EXAMINATION BY:                    PAGE NUMBER
Mr. Ching                          4

Mr. Zenger                         15

EXHIBITS FOR IDENTIFICATION:

A - - E-mail Dated 10/22/02 - - - - - - - - - - - - 9
B - - E-mail Dated 10/22/02 - - - - - - - - - - - - 9
C - - E-mail Dated 8/28/02 - - - - - - - - - - - - 9
D - - Criminal Complaint - - - - - - - - - - - - - 12
E - - Fire Department Memo Dated 6/4/02 - - - - - 16
F - - Fire Department Memo Dated 9/29/02 - - - - - 16
G - - Fire Department Memo Not Dated - - - - - - - 16
H - - Fire Department Memo Not Dated - - - - - - - 16
I - - Statement of Ethan Sage Dated 10/3/02 - - - 16
J - - Declaration of Gerald Hurd - - - - - - - - - 13

Page 4

TUESDAY, NOVEMBER 8, 2005          11:45 A.M.
(The Reporter's Disclosure Statement was made available to all counsel prior to the commencement of the following proceedings.)

MICHAEL SOONG, ESQ.
called as a witness by and on behalf of the Defendant, having been first duly sworn, was examined and testified as follows:

EXAMINATION
BY MR. CHING:

Q.  Tell us your name for the record.
A.  **Michael Soong.**
Q.  Mr. Soong, first of all, I represent Ethan Sage in this case. I want to thank you for your cooperation. I know we had to reschedule this. It's been inconvenient for you, I know, but I want to thank you for coming today.
A.  **Not a problem.**
Q.  Tell us your address and phone number.
A.  **I live in Kapaa.**
Q.  Can you give me a business address and phone?
A.  **Business address is 3088 Ekahi Street, Suite 201, Lihue, Hawaii 96766. Phone number there is 246-1010.**
Q.  Mr. Soong, were you the Kauai County

Page 5

Prosecutor back in approximately the year of 2002, 2003?
A.  Yes.
Q.  Okay. And could you tell me as the duly elected County Prosecutor, what were your duties with respect to charging decisions?
A.  With respect to charging decisions, the office, in general, would get police reports from Kauai Police Department. Those reports would be reviewed; a decision would be made whether or not a case should be -- should go forward and end up in prosecution.
    Me, personally, for most of the time I was there, I have handling the drug cases as well as the homicide cases.
Q.  Okay. As a Kauai County Prosecutor, did you have the -- did you have any discretion in the charging decisions?
A.  Yes. You know, we would look at -- initially you look at, first of all, whether there's probable cause; second, whether you can prove a case beyond a reasonable doubt; and even whether or not -- if you can prove a case beyond a reasonable doubt, whether or not the case warrants prosecution.
Q.  Under the ABA standards for prosecutors, your

Page 6

1  duty is to seek justice, not merely convictions, is
2  that a fair statement?
3  A.   That is correct.
4  Q.   Okay. Pursuant to those duties and
5  understanding, did you have a involvement in a case
6  involving a person by the name of Carl Ragasa?
7  A.   I did. Initially, I was not involved in the
8  case, but at some point, it was brought to my
9  attention and I reviewed the case.
10 Q.   Okay. Did there come a time when you made a
11 decision to have the case dismissed?
12 A.   Yes.
13 Q.   And could you tell us what was the basis for
14 that decision?
15 A.   Well, the basis was there was a lot of history
16 with the fire department and lifeguards. And some of
17 it was political, not with me personally, but from
18 what I recall hearing, initially, the fire department
19 wanted to take over the ambulances. Right now they're
20 privatized, and they had wanted it to become part of
21 the fire department. From what I understood, just
22 from talk going around the County, that as a condition
23 of taking over the ambulances, the fire department was
24 kind of forced to kind of take over the lifeguards.
25 The fire department didn't want to take over the

Page 7

1  lifeguards, and the lifeguards didn't want to be under
2  the fire department.
3      And then what eventually happened was the
4  ambulances stayed private, but the fire -- the
5  lifeguards went under the fire department. And it
6  wasn't -- I wouldn't say it wasn't a good fit, but it
7  wasn't an easy transition.
8  Q.   Okay. And in your decision making to dismiss
9  the Ragasa case, were you in any way deciding or
10 finding that there was no probable cause?
11 A.   No, not at all. There was another incident
12 that involved the chief -- the fire chief and somebody
13 else. I'm not sure exactly all the details of it, but
14 I believe it involved the complaint against the chief
15 where he either verbally threatened or made some kind
16 of physical gesture, maybe raising of the hand or
17 something like that.
18     And that matter was referred for prosecution.
19 We declined, I believe, or somebody in the office, I
20 believe, declined -- with the feeling that that was an
21 internal matter that should be handled within the
22 department. Similarly, when Mr. Ragasa's case came
23 up, I felt it was more of an internal matter that
24 should be handled within the fire department.
25 Q.   And for the lay person, so that we can

Page 8

1  understand your testimony, you're not saying that
2  there was no basis for the charges against Mr. Ragasa,
3  but just that there would be probably a better forum
4  internally within the fire department to resolve the
5  issue, is that what your statement is?
6  A.   Yes, yes. At some point, I did read the
7  report. I was looking at some document you gave me.
8  I know I read the initial report. I don't recall if
9  Detective Sheldon's report was part of what I referred
10 to at the time. It could have been, if it was there,
11 then I would have. But on paper, there is a prima
12 facia case, because there are statements by a couple
13 individuals, I believe, that threatening words and
14 conduct came from Mr. Ragasa.
15 Q.   Okay. And could you define "prima facia",
16 what you mean by that?
17 A.   In reviewing the case, there is evidence that
18 satisfies all of the elements of the offense that we
19 would be screening for.
20 Q.   Now, for the record, Mr. Soong, you came to
21 this deposition approximately half an hour early, and
22 you were given to review a copy of the deposition of
23 -- the records deposition of Craig Anthony DeCosta
24 upon written interrogatories, which was taken
25 September 2nd -- '05, is that what you were referring

Page 9

1  to?
2  A.   Yes, I did read that, and there was some
3  documents attached to it.
4  Q.   Right. Additionally, you were given copies of
5  e-mails, which were -- which we'll mark as deposition
6  exhibit 1 -- I guess A, B, C --
7      (Exhibit numbers A, B, and C are marked for
8  identification.)
9      I'm going to show you what has been marked as
10 deposition Exhibits A, B, C. And I'm going to ask
11 you, are these the e-mails provided to you just before
12 the start of this deposition?
13 A.   Yes.
14 Q.   Do you recall seeing those e-mails, at least A
15 and B, before this date?
16 A.   They're -- from me or part of it is from me.
17 And I remember something similar to this, so I assume
18 this is the actual e-mails from me and Marvin.
19 Q.   Okay. Do those e-mails accurately reflect
20 your thoughts and opinions regarding this case, at
21 least with respect to your instructions to Roland
22 Talon?
23 A.   As far as the one that's marked A, that he
24 would dismiss the matter when it comes up, I do recall
25 talking to Roland or getting word to him that the case

Page 10

1 was going to be dismissed.
2     If can review this one again, real quick --
3 yeah, I think that's accurate as to what was
4 happening, and why the case was going the way it went.
5 Q.   Are you referring to your e-mail response in
6 Exhibit B?
7 A.   That's correct.
8 Q.   Now, I'm going to refer you to Exhibit C,
9 which is -- and refer to you the bottom, where it
10 talks about "To Marlene Texeira from Craig DeCosta",
11 who is Craig DeCosta?
12 A.   Craig was the First Deputy Prosecuting
13 Attorney at the time.
14 Q.   Okay. Would you review that e-mail message?
15 A.   Okay.
16 Q.   Okay. Let me ask you, did that conform with
17 your understanding that Carl Ragasa one had been set
18 in early spring and was dismissed without prejudice
19 because your office had not received the police
20 reports, so you weren't able to review that before the
21 case came up for arraignment and setting of trial?
22 A.   I don't think I've ever seen this e-mail
23 before. But I think as I -- as I was contacted by
24 Marvin, and then asked to see the file or look into
25 the matter, I believe what is in here is correct -- is

Page 11

1 that somehow Roland got the information to me or Craig
2 got the information to me that the case had come up
3 initially, was dismissed without prejudice, but then
4 something was happening that was pushing it back to
5 come on the calendar.
6 Q.   Okay. Is it your -- let me put it this way.
7 The penal summons complaint was signed by Roland Talon
8 on or about October 7th -- we'll have this marked as
9 Exhibit D, page 365. Does that refresh your
10 recollection as to how it came back on the calendar?
11 A.   Well, not really, because I don't think I was
12 involved in this case until later. I think the
13 complaint was filed and the penal summons went out,
14 and then I think I was contacted later, and said,
15 "Hey, can you take a look at this case?" And this
16 would have been done --
17 Q.   By Roland Talon?
18 A.   -- by Roland. And I may have not even have
19 known this case was pending at that time.
20 Q.   Roland Talon, could you identify who he was?
21 A.   Roland is a deputy prosecuting attorney. He's
22 now with Big Island Prosecutor's Office.
23 Q.   Did he have charging duties at the time he was
24 assigned to the Kauai County Prosecutor's Office?
25 A.   Yes, Roland was a district court deputy at the

Page 12

1 time. And the district court deputies are assigned to
2 receive and review police reports and make their own
3 charging decisions. Either Craig or myself was
4 available for consultation at any time on screening
5 decisions. But on this case, I can say I wasn't
6 consulted prior to that, so that charging decision was
7 made without my knowledge -- to the assigned deputy,
8 made it on his own.
9 Q.   Let's mark that so we don't lose it.
10     (Exhibit number D is marked for
11 identification.)
12     And just to follow-up on Roland, as part of
13 his charging decisions would he review the case,
14 determine if there is a prima facia case, that is, all
15 the elements of the crime were there, and that there
16 was also probable cause before he would charge a case?
17 A.   Yes. And he would have the same guidelines or
18 obligations that any other attorney in the office
19 would have as far as charging.
20 Q.   Okay. What is the relationship in-between the
21 prosecutor's office and police department as far as
22 charging decisions? Does the police make the charging
23 decisions or have input into it?
24 A.   Well, the police will send over documents with
25 their charges -- I mean their charge is different than

Page 13

1 our charge, obviously. Their charge is what a person
2 is arrested for. That -- it's kind of a starting
3 point for the prosecutor, but really, our decision is
4 independent of what the police do. A lot of times,
5 they will have arrested somebody for something that we
6 don't feel there is a case against, and the charge may
7 be a lesser charge or a different charge, or they may
8 have missed something where they don't arrest them for
9 something and we add on another charge. So
10 ultimately, the charging decisions are with the
11 prosecutors.
12 Q.   Now, with respect to the e-mails that you were
13 receiving from Detective Marvin Rivera, was this
14 unusual?
15 A.   Yes and no. It wouldn't be -- I wouldn't say
16 it never happens that police would contact me, you
17 know, especially being the head of the office at that
18 time, that they would contact me and say, "Hey,
19 there's this case, can you take a look at it?" It was
20 somewhat unusual in that, I believe, they were
21 related, Marvin and Mr. Ragasa. So on the one hand
22 you're getting contacted about a case, but it may not
23 necessarily be from an unbiased position.
24 Q.   Okay. Now, in making the ultimate decision in
25 this particular case, talking about bias, you had no

DEPOSITION OF MICHAEL SOONG, ESQ.                NOVEMBER 8, 2005

Page 14

1   personal bias for or against Mr. Ragasa or Mr. Sage or
2   Mr. Kini, would that be a fair statement?
3   A.   That's correct, I've never met either one of
4   them.
5   Q.   Okay. And you weren't in any way making a
6   decision about the merits of the complaint with
7   respect to Mr. Ragasa by Mr. Kini or Mr. Sage in terms
8   of there being no merit, correct?
9   A.   That is correct. And in fact, Mr. --
10  Detective Rivera's contacting me didn't have any
11  impact on me making a decision on the merits of the
12  case either. The only impact it has -- he brought it
13  to my attention to review. And I don't know if prior
14  to that, I had known about Mr. Ragasa's case. I had
15  heard about the chief's case earlier.
16  Q.   Did all what you testified to occur in the
17  County of Kauai?
18  A.   Yes, to the best of my knowledge.
19  Q.   Okay. And I'll turn that over to Mr. -- I
20  guess -- how do you want to do it?
21       MS. CHANG: I have no questions, so we'll make
22  it easy. Thank you for appearing here, Mr. Soong. I
23  appreciate your time. At this time I have no
24  questions on behalf of my client.
25       THE WITNESS: Sounds good.

Page 15

1        MR. ZENGER: I've got a couple.
2                EXAMINATION
3   BY MR. ZENGER:
4   Q.   Can you tell me, Mr. Soong, your analysis of
5   the police report is based upon the presumption that
6   the statements in the police report are true, correct?
7   A.   That's correct. It's just a paper review.
8   Q.   Right. And have you ever had a situation
9   where, in your experience as a prosecutor, where an
10  alleged victim has come in and made a statement, and
11  later told you, you know, that statement, and he laid
12  out a prima facia case for an offense, an assault or
13  theft or harassment, and you looked at the police
14  report, and based your analysis on that statement, but
15  later that same alleged victim came in and said, "You
16  know that stuff I told you, that stuff was false," you
17  ever have that happened?
18  A.   Something similar along those lines.
19  Q.   Okay. And I take it if that were to occur,
20  that might change your analysis as to whether there
21  was probable cause to charge the case, is that right?
22  A.   That's correct.
23  Q.   I'm going to show you what has been, in this
24  case, these are exhibits, and I'm going to go through
25  page 464 of the document production -- actually, I'm

Page 16

1   going to ask the court reporter to mark these four
2   exhibits, five exhibits next in order.
3        (Off the record discussion had.)
4        (Exhibit number E through I are marked for
5   identification.)
6        MR. CHING: Before we go on, Corlis, it's 464,
7   395, 561, 562, 383, 384 through 391, I think it is.
8        MS. CHANG: Is that the same set that we used
9   in the other depo?
10       MR. ZENGER: Yes, exactly.
11       MS. CHANG: If you wouldn't mind, it would be
12  helpful to call out the page number before you refer
13  to it, that would help me since I have it all in my --
14       MR. ZENGER: Maybe I could ask Mr. Soong to
15  take a couple minutes to look at these documents. I'm
16  going to assume that you've never seen this before, is
17  that right?
18       MR. CHING: Well, it may or may not be true,
19  because if you looked at the police report, at least
20  one of them may have been included, so but I'm not
21  sure what all have been included.
22       THE WITNESS: I think I might have seen them
23  right before I came in here.
24       MR. ZENGER: Okay.
25       MR. CHING: I don't think you saw the last

Page 17

1   one, the last one was the transcript.
2        THE WITNESS: This one?
3        MR. CHING: Yeah, that was included in here.
4        MR. ZENGER: I don't have a whole lot of
5   questions for Mr. Soong. Maybe we can take just a
6   three-minute break. He can review them and when he's
7   done, we can go back on the record, is that all right?
8        MS. CHANG: That's fine with me. I'm just
9   hanging here.
10       (Recess.)
11  BY MR. ZENGER:
12  Q.   Okay. Mr. Soong, while we were on the break,
13  did you have a chance to review Exhibits E through I?
14  A.   Yes. I had reviewed the other ones a little
15  earlier, then I read Exhibit I, right now.
16  Q.   Now, earlier you said that when you reviewed
17  the police report in this case, there was a prima
18  facia case for harassment, is that correct?
19  A.   Yes.
20  Q.   And after reviewing the Exhibits E through I,
21  would that change your analysis of the case when you
22  factored that into the police report?
23       MR. CHING: Finished?
24       MR. ZENGER: Sure.
25       MR. CHING: Objection, improper and incomplete

Page 18

1 hypothetical, especially since that's not the last
2 statement of Ethan Sage, and under the rule of
3 completeness that would be an improper hypothetical.
4 You would have to include his deposition where he
5 indicated that those statements were coerced. So
6 objection on that grounds. And it's not relevant,
7 because the question here is what was his state of
8 mind at the time of his dismissal, not subsequent
9 based on --
10     MS. CHANG: I would join in those objections.
11 BY MR. ZENGER:
12 Q.    You can answer the question.
13 A.    Let me say that would be something that you
14 consider -- that would be one of all the things you
15 consider. Sometimes people recant, and they recant
16 because what they said was a lie. Other times people
17 recant because of some other reason. The other thing
18 I would look at is, he indicated that he didn't say
19 certain things to an officer, maybe you go back and
20 reinterview that officer.
21     From what I understand, statements were made,
22 not only directly to Mr. Sage, but with other people
23 present, the follow-up would be to find out what those
24 people say, whether -- whether the statements were
25 actually made or not. So this would certainly be

Page 19

1 something to consider. Aside from that, even when
2 there is a case -- a prima facia case that could go
3 forward, there were times if a victim doesn't want to
4 prosecute, the case would not go forward based on that
5 alone.
6     So this would certainly give you -- give the
7 prosecutor's office something more to think about, to
8 follow up on.
9     MR. ZENGER: Okay. I'm going to mark as next
10 in order -- you don't have these yet, so I'll give you
11 one, just have this marked as one.
12     (Off the record discussion had.)
13     (Exhibit J is marked for identification.)
14 BY MR. ZENGER:
15 Q.    Okay. This is Exhibit J, a declaration of
16 Gerald Hurd, and it's dated October 25th, 2005. And
17 I'll just read it into the record since Ms. Chang is
18 not here, and then I'll ask you a question; okay?
19 A.    Uh hmm.
20 Q.    All right. This is called, "Declaration of
21 Gerald Hurd. I, Gerald Hurd, hereby declare as
22 follows, 1, I have been a water safety officer with
23 the County since with about 1999; 2, Carl has been a
24 water safety officer with the County since about 1991.
25 I have known Carl ever since I became a County water

Page 20

1 safety officer; 3, in 2002, Defendant Sid Kini was a
2 fireman apparatus officer with Defendant, Kauai Fire
3 Department, KFD; 4, from 2000 to the present,
4 Defendant, Ethan Sage, has been a water safety officer
5 with the County. I have known Sage during all that
6 time; 5, on Wednesday, March 20th, 2002, Kini held the
7 United States Lifesaving Association, USLA, open water
8 training class at the Hanalei pier. I was one of
9 those in attendance; 6, later that day, Kini moved the
10 USLA open water training class from Hanalei pier to
11 tower 1; 7, most of the water safety officers in
12 Kini's class walked from Hanalei pier to tower 1.
13 Sage and I were among them;
14     8, as we were along the beach from the Hanalei
15 pier to tower 1, Carl and another water safety
16 officer, Mark McKamey were working at tower 1. They
17 were watching a woman in a rip current. She was not
18 far from shore and not in danger; 9, as Carl and Mark
19 McKamey were watching the woman, I saw and heard Sage
20 making derogatory comments about them in a loud voice.
21 He said, quote, 'Look at the senior guards, they don't
22 know how to do their jobs,' unquote; 10, when Carl
23 heard Sage say, 'Look at the senior guards. They
24 don't now how to do their jobs,' unquote, Carl said to
25 Sage, 'Get the fuck out of here. Don't tell us how to

Page 21

1 do you our jobs,' unquote;
2     11, Kini's USLA open water lifesaving class
3 finished up behind tower 1 near the storeroom area.
4 Nothing else out of the ordinary ever occurred; 12, at
5 no time on March 20, 2002, did Carl ever raise his
6 voice or say any threatening words towards Kini or
7 Sage in any way. All Carl ever said the whole time to
8 Sage was, 'Get the fuck out of here. Don't tell us
9 how to do our jobs'; 13, on the morning of Friday,
10 March 22nd, 2002 I was at the Hanalei pavilion at
11 about 8:00 a.m.; 14, I saw Carl walking out of the
12 men's bathroom tying his surf shorts, and I joined him
13 and we walked together to the tower 1 storeroom;
14     15, as Carl and I approached the storeroom,
15 Sage walked to within a few feet of us; 16, as Sage
16 approached Carl and I, Carl said to Sage, 'Good
17 morning, diaper boy'; 17, Sage responded to Carl by
18 saying, 'Carl, why the fuck do you have to be so
19 negative all the time?'.
20     18, right after Sage said to Carl, 'Carl, why
21 the fuck do you have to be so negative all the time?'
22 Carl kept walking past Sage and said nothing; 19, at
23 that point, Kini approached the area where Carl and I
24 were. We were the only ones there. Everyone else was
25 too far away to hear the conversation. Carl said to

Page 22

1  Kini, quote, 'We told you, Sid, don't bring him around
2  here. Why did you bring him over here?' unquote; 20,
3  Kini did not respond to Carl and Carl immediately left
4  the area for his morning run toward and down the beach
5  without further discussion or incident with anyone;
6  21, at no time on March 22nd, 2002 did Carl ever raise
7  his voice, swear at, or say any threatening words
8  toward Kini or Sage in any way. I was with him the
9  whole time.
10        I declare, under the penalty of perjury, that
11  the foregoing is true and correct to the best of my
12  knowledge and belief. Executed this 25th day of
13  October, 2005 at Hanalei, Kauai, Hawaii. Signed
14  'Gerald Hurd'". And it's captioned in this case.
15        And here's the question, assuming that this is
16  true, the four corners of this declaration is true, is
17  there any probable cause to believe that Carl Ragasa
18  committed any crime on March 22nd, 2002?
19        MR. CHING: Objection, lack of foundation,
20  incomplete and improper hypothetical. It's hearsay.
21  And this witness would not be competent to give that
22  testimony as a legal conclusion. His testimony was
23  just with respect to his decision to terminate the
24  prosecution, and what factors he utilized. And so on
25  all those grounds, I move to strike this question and

Page 23

1  any answer that may come out.
2        MS. CHANG: Join in that objection.
3    A.   **If this declaration were the only evidence,**
4  **this would be the entire police report, nothing else**
5  **that was included in the police report, if this was**
6  **the only evidence there was to make a decision based**
7  **on, prosecution would probably be declined based on**
8  **insufficient evidence.**
9        MR. ZENGER: Okay. No further questions of
10  this witness.
11        MR. CHING: Thank you again, Mr. Soong.
12              --- oOo ---
13  (The deposition concluded at 12:20 P.M.)
14
15
16
17
18
19
20
21
22
23
24
25

Page 24

1        I, MICHAEL SOONG, ESQ., do hereby
2  certify that I have read the foregoing typewritten
3  pages 1 through 23, inclusive, and corrections, if
4  any, were noted by me and the same is now a true and
5  correct transcript of my testimony.
6        Dated: _____
7
8
9
10
11
12       _____
         MICHAEL SOONG, ESQ.
13
14
15  Signed before me this
16  _____
17  day of _____ 2005.
18
19
20
21
22
23
24
25

Page 25

1
2  STATE OF HAWAII    )
                      ) SS.
3  COUNTY OF HAWAII   )
4        I, MERCEDES SHARON SOUZA, CSR NO. 184, Notary
   Public in and for the State of Hawaii do hereby
5  certify:
         That on November 8, 2005, at 11:45 A.M.,
6  appeared before me MICHAEL SOONG, ESQ., the witness
   whose deposition is contained herein, that prior to
7  being examined, the witness was by me duly sworn or
   affirmed; that the proceedings were taken in
8  computerized machine shorthand by me and thereafter
   reduced to print under my supervision; that the
9  foregoing represents, to the best of my ability, a
   correct transcript of the proceedings had in the
10  foregoing matter;
         That, if applicable, the witness was notified
11  through counsel, by mail, or by telephone to appear
   and sign; that if the deposition is not signed, either
12  the reading and signing were waived by the witness and
   all parties, or the witness has failed to appear and
13  the original has been sealed unsigned;
         That pursuant to HRCP Rule 30(f)(1) the
14  original will be forwarded to noticing counsel for
   retention.
15       I further certify that I am not counsel for
   any of the parties hereto, nor in any way interested
16  in the outcome of the cause named in the caption.
17  Dated: November 15, 2005.
18
19
         _____
20       Mercedes Sharon Souza, CSR NO. 184
         Notary Public, State of Hawaii
         My commission expires 6-11-2008
21
22
23
24
25

**A**
ABA 5:25
ability 25:9
able 10:20
accurate 10:3
accurately 9:19
actual 9:18
add 13:9
Additionally 9:4
address 4:19,21,22
affirmed 25:7
Alakea 2:9
alleged 15:10,15
ambulances 6:19 6:23 7:4
American 2:6
analysis 15:4,14,20 17:21
Anderson 2:8
answer 18:12 23:1
Anthony 8:23
apparatus 20:2
appear 25:11,12
APPEARANCES 2:1
appeared 25:6
appearing 14:22
applicable 25:10
appreciate 14:23
approached 21:14 21:16,23
approximately 5:1 8:21
area 21:3,23 22:4
arraignment 10:21
arrest 13:8
arrested 13:2,5
Aside 19:1
asked 10:24
assault 15:12
assigned 11:24 12:1 12:7
Association 20:7
assume 9:17 16:16
assuming 22:15
attached 9:3
attendance 20:9

attention 6:9 14:13
attorney 10:13 11:21 12:18
available 4:3 12:4
a.m 1:14 4:1 21:11 25:5

**B**
B 3:11 9:6,7,10,15 10:6
back 5:1 11:4,10 17:7 18:19
based 15:5,14 18:9 19:4 23:6,7
basis 6:13,15 8:2
bathroom 21:12
beach 20:14 22:4
behalf 1:11 4:6 14:24
belief 22:12
believe 7:14,19,20 8:13 10:25 13:20 22:17
best 14:18 22:11 25:9
better 8:3
beyond 5:21,23
bias 13:25 14:1
Big 11:22
Bishop 1:23 2:5
BMK 1:3
bottom 10:9
boy 21:17
break 17:6,12
bring 22:1,2
brought 6:8 14:12
business 4:21,22

**C**
C 3:12 9:6,7,10 10:8
calendar 11:5,10
call 16:12
called 4:6 19:20
caption 25:16
captioned 22:14
Carl 1:3 2:12 6:6

10:17 19:23,25 20:15,18,22,24 21:5,7,11,14,16 21:16,17,18,20,20 21:22,23,25 22:3 22:3,6,17
case 4:14 5:11,21 5:23,24 6:5,8,9,11 7:9,22 8:12,17 9:20,25 10:4,21 11:2,12,15,19 12:5,13,14,16 13:6,19,22,25 14:12,14,15 15:12 15:21,24 17:17,18 17:21 19:2,2,4 22:14
cases 5:14,15
cause 5:21 7:10 12:16 15:21 22:17 25:16
certain 18:19
certainly 18:25 19:6
certify 24:2 25:5,15
chance 17:13
Chang 2:8 14:21 16:8,11 17:8 18:10 19:17 23:2
change 15:20 17:21
charge 12:16,25 13:1,1,6,7,7,9 15:21
charges 8:2 12:25
charging 5:6,7,18 11:23 12:3,6,13 12:19,22,22 13:10
chief 7:12,12,14
chief's 14:15
Ching 2:5 3:3 4:10 16:6,18,25 17:3 17:23,25 22:19 23:11
Civil 1:3
class 20:8,10,12 21:2
client 14:24

coerced 18:5
come 6:10 11:2,5 15:10 23:1
comes 9:24
coming 4:17
commencement 4:4
commencing 1:13
comments 20:20
commission 25:20
committed 22:18
competent 22:21
complaint 3:13 7:14 11:7,13 14:6
completeness 18:3
computerized 25:8
concluded 23:13
conclusion 22:22
condition 6:22
conduct 8:14
conference 2:11
conform 10:16
consider 18:14,15 19:1
consultation 12:4
consulted 12:6
contact 13:16,18
contacted 10:23 11:14 13:22
contacting 14:10
contained 25:6
conversation 21:25
convictions 6:1
cooperation 4:15
copies 9:4
copy 8:22
Corlis 2:8 16:6
corners 22:16
correct 6:3 10:7,25 14:3,8,9 15:6,7,22 17:18 22:11 24:5 25:9
corrections 24:3
counsel 4:3 25:11 25:14,15
County 1:6 2:8 4:25 5:5,16 6:22 11:24 14:17 19:23

19:24,25 20:5 25:3
couple 8:12 15:1 16:15
court 1:1 11:25 12:1 16:1
Craig 8:23 10:10 10:11,12 11:1 12:3
crime 12:15 22:18
Criminal 3:13
CSR 1:19 25:4,19
current 20:17

**D**
D 3:1,13 11:9 12:10
danger 20:18
DARWIN 2:5
date 9:15
dated 3:10,11,12,14 3:15,16,17,18 19:16 24:6 25:17
David 1:6 2:10
day 20:9 22:12 24:17
deciding 7:9
decision 5:10 6:11 6:14 7:8 12:6 13:3,24 14:6,11 22:23 23:6
decisions 5:6,7,18 12:3,5,13,22,23 13:10
declaration 3:19 19:15,20 22:16 23:3
declare 19:21 22:10
declined 7:19,20 23:7
DeCosta 8:23 10:10 10:11
Defendant 1:11 2:5 4:6 20:1,2,4
Defendants 1:8 2:8
define 8:15
department 1:6 2:9 3:14,15,16,17 5:9

6:16,18,21,23,25
7:2,5,22,24 8:4
12:21 20:3
**depo** 16:9
**deposition** 1:10
8:21,22,23 9:5,10
9:12 18:4 23:13
25:6,11
**deputies** 12:1
**deputy** 10:12 11:21
11:25 12:7
**derogatory** 20:20
**details** 7:13
**Detective** 8:9 13:13
14:10
**determine** 12:14
**diaper** 21:17
**different** 12:25
13:7
**directly** 18:22
**Disclosure** 4:2
**discretion** 5:17
**discussion** 16:3
19:12 22:5
**dismiss** 7:8 9:24
**dismissal** 18:8
**dismissed** 6:11 10:1
10:18 11:3
**district** 1:1,2 11:25
12:1
**document** 8:7
15:25
**documents** 9:3
12:24 16:15
**doubt** 5:22,23
**drug** 5:14
**duly** 4:7 5:4 25:7
**duties** 5:5 6:4 11:23
**duty** 6:1

**E**
**E** 3:1,14 16:4 17:13
17:20
**earlier** 14:15 17:15
17:16
**early** 8:21 10:18
**easy** 7:7 14:22

**either** 7:15 12:3
14:3,12 25:11
**Ekahi** 4:22
**elected** 5:5
**elements** 8:18
12:15
**entire** 23:4
**especially** 13:17
18:1
**ESQ** 1:10 2:2,5,8
4:5 24:1,12 25:6
**Ethan** 1:7,11 2:5
3:18 4:13 18:2
20:4
**eventually** 7:3
**evidence** 8:17 23:3
23:6,8
**exactly** 7:13 16:10
**EXAMINATION**
3:2 4:9 15:2
**examined** 4:7 25:7
**Executed** 22:12
**exhibit** 9:6,7 10:6,8
11:9 12:10 16:4
17:15 19:13,15
**exhibits** 3:8 9:10
15:24 16:2,2
17:13,20
**experience** 15:9
**expires** 25:20
**e-mail** 3:10,11,12
10:5,14,22
**e-mails** 9:5,11,14
9:18,19 13:12

**F**
**F** 3:15
**facia** 8:12,15 12:14
15:12 17:18 19:2
**fact** 14:9
**factored** 17:22
**factors** 22:24
**failed** 25:12
**fair** 6:2 14:2
**false** 15:16
**far** 9:23 12:19,21
20:18 21:25

**feel** 13:6
**feeling** 7:20
**feet** 21:15
**felt** 7:23
**file** 10:24
**filed** 11:13
**find** 18:23
**finding** 7:10
**fine** 17:8
**finished** 17:23 21:3
**fire** 1:6 2:9 3:14,15
3:16,17 6:16,18
6:21,23,25 7:2,4,5
7:12,24 8:4 20:2
**fireman** 20:2
**first** 4:7,13 5:20
10:12
**fit** 7:6
**five** 16:2
**follow** 19:8
**following** 4:4
**follows** 4:8 19:22
**follow-up** 12:12
18:23
**forced** 6:24
**foregoing** 22:11
24:2 25:9,10
**forum** 8:3
**forward** 5:11 19:3
19:4
**forwarded** 25:14
**foundation** 22:19
**four** 16:1 22:16
**Friday** 21:9
**fuck** 20:25 21:8,18
21:21
**further** 22:5 23:9
25:15

**G**
**G** 3:16
**general** 5:8
**Gerald** 3:19 19:16
19:21,21 22:14
**gesture** 7:16
**getting** 9:25 13:22
**give** 4:21 19:6,6,10

22:21
**given** 8:22 9:4
**go** 5:11 15:24 16:6
17:7 18:19 19:2,4
**going** 6:22 9:9,10
10:1,4,8 15:23,24
16:1,16 19:9
**good** 7:6 14:25
21:16
**Goodsill** 2:8
**grounds** 18:6 22:25
**guards** 20:21,23
**guess** 9:6 14:20
**guidelines** 12:17

**H**
**H** 3:17
**half** 8:21
**Hanalei** 20:8,10,12
20:14 21:10 22:13
**hand** 7:16 13:21
**handled** 7:21,24
**handling** 5:14
**hanging** 17:9
**happened** 7:3
15:17
**happening** 10:4
11:4
**happens** 13:16
**harassment** 15:13
17:18
**Hawaii** 1:2,13,20
1:24 2:4,7,10 4:23
22:13 25:2,3,4,20
**head** 13:17
**hear** 21:25
**heard** 14:15 20:19
20:23
**hearing** 6:18
**hearsay** 22:20
**held** 20:6
**help** 16:13
**helpful** 16:12
**hereto** 25:15
**Hey** 11:15 13:18
**history** 6:15
**hmm** 19:19

**homicide** 5:15
**Honolulu** 1:24 2:7
2:10
**hour** 8:21
**HRCP** 25:13
**Hurd** 3:19 19:16,21
19:21 22:14
**hypothetical** 18:1,3
22:20

**I**
**identification** 3:8
9:8 12:11 16:5
19:13
**identify** 11:20
**immediately** 22:3
**impact** 14:11,12
**improper** 17:25
18:3 22:20
**incident** 7:11 22:5
**include** 18:4
**included** 16:20,21
17:3 23:5
**inclusive** 24:3
**incomplete** 17:25
22:20
**inconvenient** 4:16
**independent** 13:4
**indicated** 18:5,18
**individuals** 8:13
**information** 11:1,2
**initial** 8:8
**initially** 5:19 6:7,18
11:3
**input** 12:23
**instructions** 9:21
**insufficient** 23:8
**interested** 25:15
**internal** 7:21,23
**internally** 8:4
**interrogatories**
8:24
**involved** 6:7 7:12
7:14 11:12
**involvement** 6:5
**involving** 6:6
**in-between** 12:20

**Island** 11:22
**issue** 8:5

**J**

**J** 2:8 3:19 19:13,15
**jobs** 20:22,24 21:1 21:9
**join** 18:10 23:2
**joined** 21:12
**justice** 6:1

**K**

**Kaden** 1:7 2:10
**KANANI** 1:3
**Kapaa** 4:20
**Kauai** 1:6,6 2:8,9 4:25 5:9,16 11:24 14:17 20:2 22:13
**kept** 21:22
**KFD** 20:3
**kind** 6:24,24 7:15 13:2
**Kini** 1:7 2:11 14:2 14:7 20:1,6,9 21:6 21:23 22:1,3,8
**Kini's** 20:12 21:2
**know** 4:15,16 5:19 8:8 13:17 14:13 15:11,16 20:22
**knowledge** 12:7 14:18 22:12
**known** 11:19 14:14 19:25 20:5

**L**

**lack** 22:19
**laid** 15:11
**Law** 1:11
**lay** 7:25
**left** 22:3
**legal** 22:22
**lesser** 13:7
**Let's** 12:9
**lie** 18:16
**lifeguards** 6:16,24 7:1,1,5
**lifesaving** 20:7 21:2

**Lihue** 1:13 2:4 4:23
**lines** 15:18
**little** 17:14
**live** 4:20
**look** 5:19,20 10:24 11:15 13:19 16:15 18:18 20:21,23
**looked** 15:13 16:19
**looking** 8:7
**lose** 12:9
**lot** 6:15 13:4 17:4
**loud** 20:20
**L.D** 2:5

**M**

**M** 1:19
**machine** 25:8
**mail** 25:11
**making** 7:8 13:24 14:5,11 20:20
**March** 20:6 21:5 21:10 22:6,18
**mark** 2:2 9:5 12:9 16:1 19:9 20:16 20:18
**marked** 9:7,9,23 11:8 12:10 16:4 19:11,13
**Marlene** 10:10
**Marvin** 9:18 10:24 13:13,21
**matter** 7:18,21,23 9:24 10:25 25:10
**McKamey** 20:16 20:19
**mean** 8:16 12:25
**Memo** 3:14,15,16 3:17
**men's** 21:12
**Mercedes** 25:4,19
**merely** 6:1
**merit** 14:8
**merits** 14:6,11
**message** 10:14
**met** 14:3
**Michael** 1:10 4:5 4:12 24:1,12 25:6

**mind** 16:11 18:8
**minutes** 16:15
**missed** 13:8
**morning** 21:9,17 22:4
**move** 22:25
**moved** 20:9

**N**

**N** 3:1
**name** 4:11 6:6
**named** 25:16
**near** 21:3
**necessarily** 13:23
**negative** 21:19,21
**never** 13:16 14:3 16:16
**Notary** 1:20 25:4 25:20
**noted** 24:4
**notice** 1:14
**noticing** 25:14
**notified** 25:10
**November** 1:14 4:1 25:5,17
**number** 3:2 4:19 4:23 12:10 16:4 16:12
**numbers** 9:7

**O**

**objection** 17:25 18:6 22:19 23:2
**objections** 18:10
**obligations** 12:18
**obviously** 13:1
**occur** 14:16 15:19
**occurred** 21:4
**October** 11:8 19:16 22:13
**offense** 8:18 15:12
**office** 5:8 7:19 10:19 11:22,24 12:18,21 13:17 19:7
**officer** 18:19,20 19:22,24 20:1,2,4

20:16
**officers** 20:11
**Offices** 1:12
**okay** 5:4,16 6:4,10 7:8 8:15 9:19 10:14,15,16 11:6 12:20 13:24 14:5 14:19 15:19 16:24 17:12 19:9,15,18 23:9
**ones** 17:14 21:24
**oOo** 23:12
**open** 20:7,10 21:2
**opinions** 9:20
**order** 16:2 19:10
**ordinary** 21:4
**original** 25:13,14
**outcome** 25:16

**P**

**PACIFIC** 1:22
**page** 3:2 11:9 15:25 16:12
**pages** 24:3
**paper** 8:11 15:7
**part** 6:20 8:9 9:16 12:12
**particular** 13:25
**parties** 25:12,15
**pavilion** 21:10
**penal** 11:7,13
**penalty** 22:10
**pending** 11:19
**people** 18:15,16,22 18:24
**perjury** 22:10
**person** 6:6 7:25 13:1
**personal** 14:1
**personally** 5:13 6:17
**phone** 4:19,21,23
**physical** 7:16
**pier** 20:8,10,12,15
**Plaintiffs** 1:4 2:2
**point** 6:8 8:6 13:3 21:23

**police** 5:8,9 10:19 12:2,21,22,24 13:4,16 15:5,6,13 16:19 17:17,22 23:4,5
**political** 6:17
**position** 13:23
**prejudice** 10:18 11:3
**present** 2:12 18:23 20:3
**presumption** 15:5
**prima** 8:11,15 12:14 15:12 17:17 19:2
**print** 25:8
**prior** 4:3 12:6 14:13 25:6
**private** 7:4
**privatized** 6:20
**probable** 5:20 7:10 12:16 15:21 22:17
**probably** 8:3 23:7
**problem** 4:18
**proceedings** 4:4 25:7,9
**production** 15:25
**prosecute** 19:4
**prosecuting** 10:12 11:21
**prosecution** 5:12 5:24 7:18 22:24 23:7
**prosecutor** 5:1,5,16 13:3 15:9
**prosecutors** 5:25 13:11
**prosecutor's** 11:22 11:24 12:21 19:7
**prove** 5:21,23
**provided** 9:11
**Public** 1:20 25:4,20
**pursuant** 1:14 6:4 25:13
**pushing** 11:4
**put** 11:6
**P.M** 23:13

**Q**
question 18:7,12 19:18 22:15,25
questions 14:21,24 17:5 23:9
quick 10:2
Quinn 2:8
quote 20:21 22:1

**R**
Ragasa 1:3,3 2:12 6:6 7:9 8:2,14 10:17 13:21 14:1 14:7 22:17
Ragasa's 7:22 14:14
raise 21:5 22:6
raising 7:16
read 8:6,8 9:2 17:15 19:17 24:2
reading 25:12
real 10:2
really 11:11 13:3
reason 18:17
reasonable 5:22,23
recall 6:18 8:8 9:14 9:24
recant 18:15,15,17
receive 12:2
received 10:19
receiving 13:13
Recess 17:10
recollection 11:10
record 4:11 8:20 16:3 17:7 19:12 19:17
records 8:23
reduced 25:8
refer 10:8,9 16:12
referred 7:18 8:9
referring 8:25 10:5
reflect 9:19
refresh 11:9
regarding 9:20
reinterview 18:20
related 13:21
relationship 12:20

relevant 18:6
remember 9:17
report 8:7,8,9 15:5 15:6,14 16:19 17:17,22 23:4,5
reporter 16:1
Reporter's 4:2
REPORTING 1:22
reports 5:8,9 10:20 12:2
represent 4:13
represents 25:9
reschedule 4:15
resolve 8:4
respect 5:6,7 9:21 13:12 14:7 22:23
respond 22:3
responded 21:17
response 10:5
retention 25:14
review 8:22 10:2,14 10:20 12:2,13 14:13 15:7 17:6 17:13
reviewed 5:10 6:9 17:14,16
reviewing 8:17 17:20
Richards 1:12 2:2
right 6:19 9:4 15:8 15:21 16:17,23 17:7,15 19:20 21:20
rip 20:17
Rivera 13:13
Rivera's 14:10
Robert 1:6 2:10
Roland 9:21,25 11:1,7,17,18,20 11:21,25 12:12
rule 18:2 25:13
run 22:4

**S**
safety 19:22,24 20:1,4,11,15
Sage 1:7,11 2:5

3:18 4:14 14:1,7 18:2,22 20:4,5,13 20:19,23,25 21:7 21:8,15,15,16,17 21:20,22 22:8
satisfies 8:18
Savings 2:6
saw 16:25 20:19 21:11
saying 8:1 21:18
screening 8:19 12:4
sealed 25:13
second 5:21
see 10:24
seeing 9:14
seek 6:1
seen 10:22 16:16,22
send 12:24
senior 20:21,23
September 8:25
SERVICES 1:22
set 10:17 16:8
setting 10:21
Sharon 1:19 25:4 25:19
Sheldon's 8:9
shore 20:18
shorthand 25:8
shorts 21:12
show 9:9 15:23
Sid 20:1 22:1
Sidney 1:7 2:11
sign 25:11
signed 11:7 22:13 24:15 25:11
signing 25:12
similar 9:17 15:18
Similarly 7:22
situation 15:8
somebody 7:12,19 13:5
somewhat 13:20
Soong 1:10 4:5,12 4:13,25 8:20 14:22 15:4 16:14 17:5,12 23:11 24:1,12 25:6

Sounds 14:25
Souza 1:19 25:4,19
spring 10:18
Sproat 1:6 2:10
SS 25:2
standards 5:25
start 9:12
starting 13:2
state 1:20 18:7 25:2 25:4,20
statement 3:18 4:2 6:2 8:5 14:2 15:10,11,14 18:2
statements 8:12 15:6 18:5,21,24
States 1:1 20:7
stayed 7:4
Stifel 2:9
storeroom 21:3,13 21:14
Street 1:12,23 2:3,5 2:9 4:22
strike 22:25
stuff 15:16,16
subsequent 18:8
Suite 1:23 2:6,10 4:22
Suites 1:12 2:3
summons 11:7,13
supervision 25:8
sure 7:13 16:21 17:24
surf 21:12
swear 22:7
sworn 4:7 25:7

**T**
take 6:19,24,25 11:15 13:19 15:19 16:15 17:5
taken 1:11,19 8:24 25:7
talk 6:22
talking 9:25 13:25
talks 10:10
Talon 9:22 11:7,17 11:20

telephone 2:11 25:11
tell 4:11,19 5:4 6:13 15:4 20:25 21:8
terminate 22:23
terms 14:7
testified 4:8 14:16
testimony 8:1 22:22,22 24:5
Texeira 10:10
thank 4:14,16 14:22 23:11
theft 15:13
thing 18:17
things 18:14,19
think 10:3,22,23 11:11,12,14 16:7 16:22,25 19:7
thoughts 9:20
threatened 7:15
threatening 8:13 21:6 22:7
three-minute 17:6
time 5:13 6:10 8:10 10:13 11:19,23 12:1,4 13:18 14:23,23 18:8 20:6 21:5,7,19,21 22:6,9
times 13:4 18:16 19:3
today 4:17
told 15:11,16 22:1
tower 2:6 20:11,12 20:15,16 21:3,13
training 20:8,10
transcript 17:1 24:5 25:9
transition 7:7
trial 10:21
true 15:6 16:18 22:11,16,16 24:4
TUESDAY 4:1
turn 14:19
tying 21:12
typewritten 24:2

**U**
Uh 19:19
ultimate 13:24
ultimately 13:10
Umi 1:12 2:3
unbiased 13:23
understand 8:1 18:21
understanding 6:5 10:17
understood 6:21
United 1:1 20:7
UNLIMITED 1:22
unquote 20:22,24 21:1 22:2
unsigned 25:13
unusual 13:14,20
USLA 20:7,10 21:2
utilized 22:24

**V**
verbally 7:15
victim 15:10,15 19:3
voice 20:20 21:6 22:7
vs 1:5

**W**
waived 25:12
walked 20:12 21:13 21:15
walking 21:11,22
want 4:14,16 6:25 7:1 14:20 19:3
wanted 6:19,20
warrants 5:24
wasn't 7:6,6,7 12:5
watching 20:17,19
water 19:22,24,25 20:4,7,10,11,15 21:2
way 7:9 10:4 11:6 14:5 21:7 22:8 25:15
Wednesday 20:6
went 7:5 10:4 11:13

weren't 10:20 14:5
we'll 9:5 11:8 14:21
witness 4:6 14:25 16:22 17:2 22:21 23:10 25:6,7,10 25:12,12
woman 20:17,19
word 9:25
words 8:13 21:6 22:7
working 20:16
wouldn't 7:6 13:15 13:15 16:11
written 8:24

**X**
X 3:1

**Y**
yeah 10:3 17:3
year 5:1

**Z**
Zenger 1:12 2:2,2 3:5 15:1,3 16:10 16:14,24 17:4,11 17:24 18:11 19:9 19:14 23:9

**0**
03-00540 1:3
05 8:25

**1**
1 9:6 19:22 20:11 20:12,15,16 21:3 21:13 24:3
10 20:22
10/22/02 3:10,11
10/3/02 3:18
1001 2:5
1008 2:6
1099 2:9
11 21:2
11:45 1:14 4:1 25:5
12 3:13 21:4
12:20 23:13
13 3:19 21:9

14 21:11
1470 1:23
15 3:5 21:14 25:17
16 3:14,15,16,17,18 21:15
17 21:17
18 21:20
1800 2:10
184 1:19 25:4,19
19 21:22
1991 19:24
1999 19:23

**2**
2 19:23
2nd 8:25
20 21:5 22:2
20th 20:6
2000 20:3
2002 5:1 20:1,6 21:5,10 22:6,18
2003 5:2
2005 1:14 4:1 19:16 22:13 24:17 25:5 25:17
201 4:23
204 1:13 2:3
21 22:6
211B 1:13 2:3
22nd 21:10 22:6,18
23 24:3
246-1010 4:24
25th 19:16 22:12

**3**
3 20:1
30(f)(1) 25:13
3016 1:12 2:3
3088 4:22
365 11:9
383 16:7
384 16:7
391 16:7
395 16:7

**4**
4 3:3 20:3

464 15:25 16:6

**5**
5 20:6
524-PRSU 1:25
561 16:7
562 16:7

**6**
6 20:9
6-11-2008 25:20
6/4/02 3:14

**7**
7 20:11
7th 11:8
737 1:23

**8**
8 1:14 4:1 20:14 25:5
8/28/02 3:12
8:00 21:11
808 1:25

**9**
9 3:10,11,12 20:18
9/29/02 3:15
96766 1:13 2:4 4:23
96813 1:24 2:7,10