IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA and KANANI RAGASA,<br><br>         Plaintiffs,<br><br>   vs.<br><br>COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI and ETHAN SAGE,<br><br>         Defendants. | ) CIVIL NO. 03-00540<br>)<br>) **DECLARATION OF MYLES EMURA**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF MYLES EMURA

I, MYLES EMURA, hereby declare as follows:

1. I am 50 years old.

2. I was born and raised on Kauai.

3. I have been a Water Safety Officer with the COUNTY since about 1984.

4. In March of 2000, then County of Kauai Mayor decided to transfer all Water Safety Officers from Parks and Recreation to KFD, but delayed the actual transfer until July 2000.

5. In July 2000, Defendant DAVID SPROAT

("SPROAT"), was the Chief of Defendant Kauai Fire Department ("KFD").

6. In January 2001 SPROAT placed command and control of all of the thirty (30) or so Water Safety Officers on Kauai, under KADEN.

7. In or about June 2001, I was promoted from being a Water Safety Officer to being a Water Safety Officer Supervisor, replacing Water Safety Officer III Supervisor Randy Ortiz.

8. When I was promoted, there was one other Water Safety Officer III Supervisor, that being Kaleo Hookano. Kaleo and I were supervising about thirty Water Safety Officers employed by the COUNTY.

9. I learned from Kaleo that SPROAT and KADEN wanted to place he, the other Water Safety Officers and I under the direct command and control of Defendant SIDNEY KINI (hereinafter "KINI").

10. Based upon my observations and knowledge of KINI, who was a fire fighter, and facts about KINI's background that I learned from Kaleo, I objected to

2

KADEN and SPROAT having KINI involved with the Water Safety Program in any way, shape or form.

11. I have known Plaintiff CARL RAGASA ("CARL") for a long time.

12. CARL has been a Water Safety Officer with the COUNTY since about 1991.

13. CARL is and has a deserved reputation as the best Water Safety Officer in the County and one of the finest big wave surfers and watermen I have ever seen or known.

14. After KFD, SPROAT and KADEN took over the command and control of the COUNTY Water Safety Program, they started holding Water Safety Meetings on a regular basis (the "KFD Water Safety Program Meetings").

15. During the KFD Water Safety Program Meetings and at other times during the summer of 2001, KADEN told me many times that he was having problems with CARL and that he really wanted to fire CARL.

16. During the summer of 2001, KADEN filed at least one fraudulent reprimand against CARL.

17. During the summer of 2001, KADEN attempted on several occasions to get CARL reprimanded for leaving his post at the Tower 1 Pavilion without authorization.

18. During the summer of 2001, I told CARL several times to watch out for KADEN and SRPOAT because they were trying to "set him up" so they could terminate im.

19. I attended the KFD Water Safety Program Meetings with SPROAT and KADEN on a regular basis.

20. During the summer of 2001, I supported Kaleo fully in his efforts to dissuade SPROAT and KADEN from appointing KINI to take over command and control of all of the Water Safety Officers on Kauai.

21. At all times, I told CARL about the heated arguments that Kaleo was having with SPROAT and KADEN about KINI being appointed to take over command and control of all of the Water Safety Officers on Kauai.

22. CARL told me that he agreed with Kaleo's assessment that KINI was not qualified to take over command and control of all of the Water Safety Officers on Kauai. CARL told me that he would help Kaleo to

stop KINI from being involved in the Water Safety Program in any way that he could.

23. During the KFD Water Safety Program Meetings, Kaleo and I both told told KADEN and SPROAT that CARL was on our side with respect to KINI was not being qualified to take over command and control of all of the Water Safety Officers on Kauai and that CARL was backing me up all the way.

24. At some point during the summer of 2001, KADEN and SPROAT told me that they were abandoning their plans to have KINI take over command and control of all of the Water Safety Officers on Kauai. I did not believe them.

25. After I heard KADEN and SPROAT claim that they were abandoning their plans to have KINI take over command and control of all of the Water Safety Officers on Kauai, I told CARL about their claim. I also told him that I did not believe them. CARL told me that he did not believe them, either and that KADEN and SPROAT would keep trying to get KINI in no matter what because KINI was "their boy."

26. By the fall of 2001, I formed the belief that SPROAT and KADEN were lying to me about a lot of matters that touched and concerned the Water Safety Program. Therefore, I, along with Kaleo, I started my own internal investigation of KADEN and SPROAT into their activities at KFD and the COUNTY.

27. Based upon my investigation, I found probable cause to believe that SPROAT had committed the crimes of assault and battery, illegal conversion of County resources, money laundering and theft. Specifically:

   A. SPROAT, along with KADEN and KINI, were renting COUNTY equipment out to Hollywood movie production companies and keeping the money for themselves.

   B. SPROAT, along with KADEN and KINI were laundering monies from Hollywood movie production companies through a sham "non-profit" entity called the Kauai Ocean Rescue Council ("KORC"); and

6

C. SPROAT had assaulted and terrorized at least one Water Safety Officer, that being Allan Arquette.

28. Based upon my investigation, I found probable cause to believe that KADEN had committed the crimes of money laundering, illegal drug use and illegal drug trafficking. Specifically:

A. KADEN, along with SPROAT and KINI, were renting COUNTY equipment out to Hollywood movie production companies and keeping the money for themselves.

B. KADEN, along with SPROAT and KINI, were laundering monies from Hollywood movie production companies through KORC;

C. KADEN was selling his personal used jet skis to the COUNTY at grossly inflated prices with SPROAT's knowledge and consent; and

D. KADEN was importing "China White" heroin from the Far East to Kauai and selling it in Hawaii.

29. Based upon my investigation, I found probable cause to believe that KINI had committed the crimes of illegal conversion of County resources and money laundering.

   A. KINI, along with SPROAT and KADEN, were renting COUNTY equipment out to Hollywood movie production companies and keeping the money for themselves;

   B. KINI, along with SPROAT and KADEN, were laundering monies from Hollywood movie production companies through KORC; and

   C. KINI was selling his personal used jet skis to the COUNTY at grossly inflated prices with SPROAT's knowledge and consent.

30. At all times, I kept CARL fully informed of the results of my investigation of SPROAT, KADEN and KINI.

31. Between the fall of 2001 and early 2002 I told the Mayor of Kauai, many members of the County Council and other KFD Battalion Chiefs and supervisors that on many occasions that SPROAT had committed the crimes of

assault and battery, illegal conversion of County resources, money laundering and theft and told them the details of his wrongdoing in that regard.

32. Between the fall of 2001 and early 2002 I told the Mayor of Kauai, many members of the County Council, and other KFD Battalion Chiefs and supervisors KFD that on many occasions that KADEN had committed the crimes of money laundering, illegal drug use and illegal drug trafficking and told them the details of his wrongdoing in that regard.

33. Between the fall of 2001 and early 2002 I told the Mayor of Kauai, many members of the County Council, other Battalion Chiefs and supervisors in KFD that on many occasions between the fall of 2001 and early 2002 that KINI had committed the crimes of illegal conversion of County resources and money laundering and told them the details of his wrongdoing in that regard.

34. Between the fall of 2001 and early 2002 I told CARL many times that I had told the Mayor of Kauai, many members of the County Council, other Battalion Chiefs and supervisors in KFD that on many occasions

9

between the fall of 2001 and early 2002 that SPROAT, KADEN and KINI had committed the crimes of illegal conversion of County resources and money laundering and told them the details of his wrongdoing in that regard.

35. On or about January 2, 2002, SPROAT and KADEN suspended me without pay from my position as a Water Safety Officer III Supervisor and COUNTY employee.

36. SPROAT and KADEN suspended me because I was reporting SPROAT's, KADEN's and KINI's criminal activities to the Mayor of Kauai, many members of the County Council, other Battalion Chiefs and supervisors in KFD, and because I opposed KINI and KADEN from being involved in the Water Safety Program and because I did not want KFD to be involved in water safety training.

70. By the time that I was suspended, the policies of SPROAT and KADEN had caused the work conditions and mission readiness of all Waters Safety Officers on Kauai to be greatly declined and at the same time seriously compromised public safety for Kauai's beachgoers.

37. When I was suspended, I told CARL to watch out

10

for SPROAT and KADEN because I knew that SPROAT and KADEN would be out to get rid of him from the Water Safety Program as well. I told him this because CARL knew from me all about SPROAT's, KADEN's and KINI's criminal activities and the fact that I had disclosed them to the Mayor of Kauai, many members of the County Council, other Battalion Chiefs and supervisors in KFD, and because he, too, opposed KINI and KADEN from be involved in the Water Safety Program and did not want KFD to be involved in water safety training.

38. Within a month of my being suspended, KADEN and SPROAT assigned KINI to take over all open ocean training of the Water Safety Officers.

39. After SRPOAT and KADEN suspended me, I filed a grievance against the COUNTY in connection therewith through my union, the Hawaii Government Employees Association.

40. About a year or so later, I received an arbitration award against the COUNTY. I am back at work.

41. In all the time that I have known CARL, I have

never had one person ever complain to me that he has been violent toward them or threatened them with violence in any way, shape or form.

42. In all the time that I have known CARL, I have never seen or heard CARL behave in a violent manner toward anyone or threaten anyone with violence in any way, shape or form.

43. CARL has never had a reputation for committing violence toward others or threatening others with violence.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Executed this 24th day of November, 2005 at Lihue, Kauai, Hawaii.

_____
MYLES EMURA

---

**DECLARATION OF MYLES EMURA; <u>Carl Ragasa and Kanani Ragasa v. County of Kauai, et. al,</u>** In the United States District Court for the District of Hawaii, Civil No. CV 03-00162 (BMK).

---