IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA and KANANI RAGASA, | ) CIVIL NO. 03-00540 ) |
| Plaintiffs, | ) **DECLARATION OF NATHAN** ) **HOOKANO** ) |
| vs. | ) ) |
| COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI and ETHAN SAGE, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF NATHAN HOOKANO

I, NATHAN HOOKANO, hereby declare as follows:

1. I am 56 years old.

2. I was born and raised on Kauai.

3. I have known Defendant SIDNEY KINI ("KINI") almost 20 years.

4. I have been a Water Safety Officer with the COUNTY since about 1985.

5. KINI had been a Water Safety Officer with the COUNTY since before the time I that I was hired.

6. When KINI and I were Water Safety Officers together, the Water Safety Program was run by the COUNTY's Parks and Recreation Department.

7. KINI always told me that he was not happy being a Water Safety Officer because there was no future in it and no opportunity for advancement.

8. When KINI was a Water Safety Officer, he always told me that he wanted to be a fire fighter with the County because there was a future in it and there were good opportunities for advancement.

9. When KINI was a Water Safety Officer, he always told me that he would do anything to be a fire fighter with the County.

10. While KINI was a Water Safety Officer, he told me many times that he had taken the test to be a fire fighter with the County on at least three (3) separate occasions, but that he failed each time.

11. While KINI was a Water Safety Officer, he told me that he formed a close relationship with Defendant

ROBERT KADEN ("KADEN"), who was a County fire fighter at the time.

12. By the time that KINI told me that he had formed a close relationship with KADEN, I had known KADEN for many years.

13. In or about 1989, KINI told me that KADEN was going to see to it that KINI got hired as a firefighter.

14. The next year, 1990, KINI did become a firefighter with the COUNTY.

15. Shortly after KINI became a firefighter, he told me that he owed KADEN a lot.

16. KINI was never a very good Water Safety Officer. He only worked on the southwest side of Kauai, where the waves are small most of the year and where the waves never get nearly as big as they do on the North Shore of Kauai.

17. KINI never did any rescues on the North Shore. KINI was afraid of the North Shore, especially in the

winter time when the waves are big.

18. All his life, KINI has surfed recreationally, but never in big waves. KINI has told me many times that he is afraid of big waves. From having watched him surf countless times, I know that he is in fact afraid of big waves.

20. The Red Cross never trained or certified anybody in open ocean lifesaving. Red Cross training is only for certifying lifeguards that work in swimming pools or lakes, not the open ocean.

21. While KINI was a Water Safety Officer, he was never certified by any entity in open ocean lifesaving.

22. KINI became a firefighter in or about 1990. By that time, I had attained the rank of Water Safety Officer III in 1996 and was supervising all of the Water Safety Officers within the County Parks and Recreation Department.

23. Two years after KINI quit as a Water Safety Officer and became a fire fighter, an entity called the United States Lifesaving Association ("USLA") started its Lifeguard Agency Certification Program. It

4

replaced the Red Cross as the certifying agency for Water Safety Officers on Kauai.

24. In 1998, six years after KINI quit being a Water Safety Officer, I obtained the Lifeguard Agency Certification Program from USLA.

25. As a certified USLA instructor in good standing with USLA, I am very familiar with the USLA Guidelines and certification procedures and requirements.

26. The USLA Guidelines require, among other things, that to be considered for certification as an open ocean USLA instructor, the applicant must have worked a minimum cumulative total of 1,000 hours of employment compiled in no fewer than three seasons as a seasonal open ocean lifeguard.

27. In March of 2000, the County of Kauai Mayor decided to transfer all Water Safety Officers from Parks and Recreation to KFD, but delayed the actual transfer until July 2000.

5

28. In July 2000, Defendant DAVID SPROAT ("SPROAT") was the Chief of Defendant Kauai Fire Department ("KFD"). By that time, I had known SPROAT both personally and professionally for many years.

29. As of July 2000, there were two Water Safety Officer Supervisors, those being Randy Ortiz and me.

30. As of July 2000, Randy Ortiz and I were the only persons within the COUNTY that were qualified to train and certify lifeguards in open ocean lifesaving under the USLA Lifeguard Agency Certification Program.

31. For the next several months, Sproat left both Water Safety Officer Supervisor Ortiz and me in charge of training and certifying all the other Water Safety Officers.

32. That all changed in January 2001. In that month, SPROAT placed command and control of all the Water Safety Officers on Kauai, including Water Safety Officer Supervisor Ortiz and me, under KADEN.

33. SPROAT told me that KADEN had been a lifeguard in Honolulu many years earlier and that he was qualified to supervise the County Water Safety Officers. I knew that to be false.

34. KADEN was never a Water Safety Officer in Honolulu or anywhere else.

35. Like KINI, KADEN surfs but is afraid of big waves. From having watched him surf countless times, I know that he is in fact afraid of big waves.

36. I did not want KADEN involved in the Water Safety Program and did everything that I could to try and persuade SPROAT not to appoint him. I was unsuccessful in that effort.

37. In or about June 2001, KINI told me that KADEN and SPROAT wanted to appoint KINI to take over command and control of all of the twenty (20) or so Water Safety Officers on Kauai, including Water Safety Officer Supervisor Ortiz and me.

38. I told KINI that I would do everything within my power to stop KADEN and SPROAT from appointing KINI to take over command and control of all of the Water

7

Safety Officers on Kauai because he was not qualified to do so.

39. I protested and complained to KADEN and SPROAT about KINI being involved in any way in open ocean training and certification of the Water Safety Officers. I told them both on numerous occasions that Kini had been a KFD Fireman since March 1990 and that the USLA Lifeguard Agency Certification Program did not even exist until 1992, and that it was not possible for KINI to ever have been qualified by USLA to be the lead instructor for any USLA sanctioned open ocean courses.

40. I have known Plaintiff CARL RAGASA ("CARL") for a long time.

41. CARL has been a Water Safety Officer with the COUNTY since about 1991. During that time, I was his direct Supervisor as of 1996.

42. CARL is and has a deserved reputation as the best Water Safety Officer in the County and one of the finest big wave surfers and watermen I have ever seen or known.

43. For many years now, all of the Water Safety Officers that work on the North Shore have looked up to CARL and viewed him as their leader.

44. Since at least the mid-1990's, I always consulted with CARL when making decisions about how to staff the North Shore, how to train Water Safety Officers that work on the North Shore, and how to allocate Water Safety Officers in times of heavy surf conditions on the North Shore.

45. After KFD, SPROAT and KADEN took over the command and control of the COUNTY Water Safety Program, they started holding Water Safety Meetings on a regular basis (the "KFD Water Safety Program Meetings").

46. During the KFD Water Safety Program Meetings and at other times during the summer of 2001, KADEN told me that he was having problems with CARL and that he really wanted to fire CARL.

47. During the summer of 2001, KADEN filed at least one fraudulent reprimand against CARL. I convinced KADEN to rescind it.

48. During the summer of 2001, KADEN attempted on several occasions to get CARL reprimanded for leaving his post at the Tower 1 Pavilion without authorization.

49. During the summer of 2001, I told CARL several times to watch out for KADEN and SRPOAT because they were trying to "set him up" so they could terminate him.

50. I attended the KFD Water Safety Program Meetings with SPROAT and KADEN on a regular basis.

51. During the summer of 2001, I had heated arguments with SPROAT and KADEN about KINI being appointed to take over command and control of all the Water Safety Officers on Kauai. I told them both on numerous occasions that KINI was not qualified to do so. I told them that KINI did not have the training or the background. I also told them that fire fighters have no business training or supervising water safety officers on how to be lifeguards in open ocean conditions.

52. At all times, I told CARL about the heated arguments that I was having with SPROAT and KADEN about KINI being appointed to take over command and control of all of the Water Safety Officers on Kauai.

53. CARL told me that he agreed with my assessment that KINI was not qualified to take over command and control of all of the Water Safety Officers on Kauai. CARL told me that he would help me to stop KINI from being involved in the Water Safety Program in any way that he could.

54. During the KFD Water Safety Program Meetings, I told KADEN and SPROAT that CARL was on my side with respect to KINI not being qualified to take over command and control of all of the Water Safety Officers on Kauai and that CARL was backing me up all the way.

55. At some point during the summer of 2001, KADEN and SPROAT told me that they were abandoning their plans to have KINI take over command and control of all of the Water Safety Officers on Kauai. I did not believe them.

12

56. After I heard KADEN and SPROAT claim that they were abandoning their plans to have KINI take over command and control of all the Water Safety Officers on Kauai, I told CARL about their claim. I also told him that I did not believe them. CARL told me that he did not believe them, either, and that KADEN and SPROAT would keep trying to get KINI in no matter what because KINI was "their boy."

57. By the fall of 2001, I formed the belief that SPROAT and KADEN were lying to me about a lot of matters that touched and concerned the Water Safety Program. Therefore, I started my own internal investigation of KADEN and SPROAT into their activities at KFD and the COUNTY.

58. Based upon my investigation, I found probable cause to believe that SPROAT had committed the crimes of assault and battery, illegal conversion of County resources, money laundering and theft. Specifically:

   A.  SPROAT, along with KADEN and KINI, were renting COUNTY equipment out to Hollywood

13

movie production companies and keeping the money for themselves.

B. SPROAT, along with KADEN and KINI were laundering monies from Hollywood movie production companies through a sham "non-profit" entity called the Kauai Ocean Rescue Council ("KORC"); and

C. SPROAT had assaulted and terrorized at least one Water Safety Officer, that being Allan Arquette.

59. Based upon my investigation, I found probable cause to believe that KADEN had committed the crimes of and money laundering:

A. KADEN, along with SPROAT and KINI, were renting COUNTY equipment out to Hollywood movie production companies and keeping the money for themselves.

B. KADEN, along with SPROAT and KINI, were laundering monies from Hollywood movie production companies through KORC; and

  C. KADEN was selling his personal used jet skis to the COUNTY at grossly inflated prices with SPROAT's knowledge and consent.

60. Based upon my investigation, I found probable cause to believe that KINI had committed the crimes of illegal conversion of County resources and money laundering:

  A. KINI, along with SPROAT and KADEN, were renting COUNTY equipment out to Hollywood movie production companies and keeping the money for themselves;

  B. KINI, along with SPROAT and KADEN, were laundering monies from Hollywood movie production companies through KORC; and

  C. KINI was selling his personal used jet skis to the COUNTY at grossly inflated prices with SPROAT's knowledge and consent.

61. At all times, I kept CARL fully informed of the results of my investigation of SPROAT, KADEN and KINI.

62. Between the fall of 2001 and early 2002 I told the Mayor of Kauai, many members of the County Council and other KFD Battalion Chiefs and supervisors that on many occasions that SPROAT had committed the crimes of assault and battery, illegal conversion of County resources, money laundering and theft and told them the details of his wrongdoing in that regard.

63. Between the fall of 2001 and early 2002 I told the Mayor of Kauai, on many occasions that KADEN had committed the crimes of money laundering, and told them the details of his wrongdoing in that regard.

64. Between the fall of 2001 and early 2002 I told CARL many times that I had told the Mayor of Kauai, other Battalion Chiefs and supervisors in KFD that on many occasions between the fall of 2001 and early 2002 that SPROAT, KADEN and KINI had committed the crimes of illegal conversion of County resources and money laundering and told them the details of his wrongdoing in that regard.

65. On or about December 31, 2002, SPROAT and KADEN terminated me from my position as a Water Safety Officer III Supervisor and COUNTY employee.

66. When I was terminated, I told CARL to watch out for SPROAT and KADEN because I knew that SPROAT and KADEN would be out to terminate him, as well. I told him this because CARL knew from me all about SPROAT's, KADEN's and KINI's criminal activities and the fact that I had disclosed them to the Mayor of Kauai, many members of the County Council, other Battalion Chiefs and supervisors in KFD, and because he, too, opposed KINI and KADEN from being involved in the Water Safety Program and did not want KFD to be involved in water safety training.

67. By the time that I was terminated, the policies of SPROAT and KADEN had caused the work conditions and mission readiness of all Waters Safety Officers on Kauai to be greatly declined and at the same time seriously compromised public safety for Kauai's beachgoers.

17

68. Within a month of my being terminated, KADEN and SPROAT assigned KINI to take over all open ocean training of the Water Safety Officers.

69. After SRPOAT and KADEN terminated me, I filed a grievance against the COUNTY in connection therewith through my union, the Hawaii Government Employees Association.

70. About a year or so later, the COUNTY settled my grievance with them. I am back on the job as a Water Safety Officer III Supervisor.

71. In all the time that I have known CARL, I have never had one person ever complain to me that CARL has been violent toward them or threatened them with violence in any way, shape or form.

72. In all the time that I have known CARL, I have never seen or heard CARL behave in a violent manner toward anyone or threaten anyone with violence in any way, shape or form.

73. CARL has never had a reputation for committing violence toward others or threatening others with violence.

18

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Executed this 24th day of November, 2005 at Lihue, Kauai, Hawaii.

NATHAN HOOKANO

---

**DECLARATION OF NATHAN HOOKANO;** <u>Carl Ragasa and Kanani Ragasa v. County of Kauai, et. al,</u> In the United States District Court for the District of Hawaii, Civil No. CV 03-00162 (BMK).

---