GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

| | |
|---|---|
| CORLIS J. CHANG | 3539-0 |
| CCHANG@GOODSILL.COM | |
| BARBARA A. PETRUS | 3238-0 |
| BPETRUS@GOODSILL.COM | |
| EDMUND K. SAFFERY | 5860-0 |
| ESAFFERY@GOODSILL.COM | |
| KIMBERLY J. KOIDE | 8256-0 |
| KKOIDE@GOODSILL.COM | |

Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawai'i  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendants
COUNTY OF KAUA'I, KAUA'I FIRE
DEPARTMENT, DAVID SPROAT, ROBERT
KADEN AND SIDNEY KINI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA AND KANANI RAGASA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI, AND ETHAN SAGE,<br><br>Defendants. | CV. NO. 03-00540 BMK<br><br>DEFENDANTS COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S **REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II** OF PLAINTIFFS CARL RAGASA AND KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003 (**VIOLATION OF 42 U.S.C. §1983, CIVIL RIGHTS VIOLATION**), FILED 9/7/05; |

1110775.1

|   |   |
|---|---|
|   | DECLARATION OF CORLIS J. CHANG; EXHIBITS "1" – "3"; CERTIFICATE OF SERVICE <br><br> **HEARING:** January 24, 2006 <br> **TIME:** 10:00 a.m. <br> **HON. BARRY M. KURREN** <br><br> **TRIAL DATE:** April 18, 2006 |

DEFENDANTS COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT,
DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S
**REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT ON COUNTS I AND II** OF PLAINTIFFS
CARL RAGASA AND KANANI RAGASA'S COMPLAINT FILED ON
OCTOBER 3, 2003 (**VIOLATION OF 42 U.S.C. §1983,
CIVIL RIGHTS VIOLATION**), FILED 9/7/05

DEFENDANTS COUNTY OF KAUA'I ("County"), KAUA'I FIRE

DEPARTMENT ("KFD"), DAVID SPROAT ("Sproat"), ROBERT KADEN

("Kaden") and SIDNEY KINI ("Kini") (Sproat, Kaden and Kini collectively

referred to as "Employee Defendants") (County, KFD and Employee Defendants

collectively referred to herein as "County Defendants") by and through their

counsel, Goodsill Anderson Quinn & Stifel, a Limited Liability Law Partnership

LLP, hereby submits their Reply Memorandum in Support of County Defendants'

Motion for Summary Judgment on Counts I and II of Plaintiffs Carl Ragasa and

Kanani Ragasa's Complaint Filed on October 3, 2003 (Violation of 42 U.S.C.

2

§1983, Civil Rights Violation) filed herein on September 7, 2005.  (Motion hereafter referred to as "Civil Rights Claims Motion").

      DATED: Honolulu, Hawai'i, January 13, 2006.

                /s/ Corlis J. Chang
                CORLIS J. CHANG
                BARBARA A. PETRUS
                EDMUND K. SAFFERY
                KIMBERLY J. KOIDE

                Attorneys for Defendants
                COUNTY OF KAUA'I, KAUA'I FIRE
                DEPARTMENT, DAVID SPROAT, ROBERT
                KADEN AND SIDNEY KINI

**MEMORANDUM**

I.   **INTRODUCTION**

Plaintiffs contend that their Section 1983 claims against Defendants should be allowed to stand because they have adduced evidence showing that: (1) Defendants Sproat, Kaden, Kini and Sage entered into a conspiracy to get Plaintiff Carl Ragasa ("Ragasa") fired; and (2) Defendants Sproat, Kaden and Kini somehow "coerced" Defendant Sage to lie about what actually happened with regard to the March 22, 2002 incident in order to get Ragasa arrested.  As demonstrated below, Plaintiffs' arguments miss the point.

As made clear in the Civil Rights Claims Motion, Plaintiffs cannot sustain their Section 1983 claim merely by showing that Sproat, Kaden and Kini were employed by the County at the time they engaged in their alleged conspiracy to get Ragasa arrested.  Rather, they must demonstrate that Ragasa's arrest *resulted from* the exercise of official authority or right possessed by Sproat, Kaden or Kini by virtue of their status as employees of the Kaua'i Fire Department.  Insofar as Plaintiffs have failed to make such a showing, they cannot establish an essential element of their Section 1983 claim; to wit, that Ragasa's arrest was the result of official action taken by Sproat, Kaden or Kini "under color of state law."  As such, Plaintiffs' Section 1983 claim against County Defendants must be dismissed.

1109437.1

## II. ARGUMENT

### A. Plaintiffs Have Adduced No Evidence To Show That Carl Ragasa's Arrest Resulted From the Exercise of Official Power or Right Bestowed opon Defendants Sproat, Kaden or Kini by Virtue of their Status as Employees of the Kaua'i Fire Department.

In their opposition, Plaintiffs appear to be contending that because the alleged conspiracy to get Ragasa arrested arose out of a dispute that originated in the workplace, any actions taken by Sproat, Kaden and Kini in furtherance of that conspiracy must be deemed to have occurred "under color of state law." Plaintiffs are mistaken.

In order for Ragasa to establish that Sproat, Kaden and Kini's alleged acts of wrongdoing were done "under color of state law," he must show that the act which allegedly deprived Ragasa of his constitutional rights; in this case, his arrest by law enforcement officers, directly resulted from the exercise by Defendants Sproat, Kaden and Kini of official power or right possessed by them by virtue of their status as employees of the Kaua'i County Fire Department. This was the situation faced by the Court in *Vanderlinde v. Brochman*, 792 F.Supp. 52 (N.D. Ill. 1992) (cited by County Defendants in the Civil Rights Claims Motion) in which Plaintiffs sought to bring Section 1983 claims against two firefighters who had arrested and beaten them after flashing their Fire Department badges and claiming to be "the law in Oaklawn." The Court in that case, stated:

> And law enforcement is not of course the authorized role of

> firefighters, so that the usual Section 1983 scenario of law enforcement personnel who act in an unlawful way – more accurately, an unconstitutional way – is not at issue here. . . . [L]aw enforcement is no part of a firefighter's responsibility. ***Nothing about the office of fireman***, the office with which [Defendants] were cloaked, either implies or facilitates their usurpation of law enforcement (for which in this case read "law-breaking") activities.

*Id*. at 53-55 (emphasis added).

The *Vanderlinde* case highlights the key failing of Plaintiffs' Section 1983 claim in this case; specifically, that Plaintiffs cannot show a causal nexus between Ragasa's arrest and any alleged exercise of official power or right possessed by Defendants Sproat, Kaden or Kini by virtue of their status as employees of the Kauaʻi Fire Department. There is no allegation or evidence here, for instance, that any of the Defendants used any alleged power they possessed as members of the Fire Department, to compel, influence or order the Kauaʻi Police Department to arrest and detain Ragasa. This is hardly surprising since the office of "fireman" is simply not imbued with the kind of power that would even put a member of a fire department in a position to orchestrate an arrest, much less violate anyone's Constitutional rights; a fact which probably explains why there are only a handful of reported cases in the United States which even involve Section 1983 claims against firefighters.

As noted by the Court in *Vanderlinde*, *supra*, the usual Section 1983 scenario normally involves claims against *police* officers. This of course is

because police officers, unlike firefighters, actually possess the ability, by virtue of their arrest and detainment powers, to deprive a person of his or her Constitutional rights. Even where police officers are concerned, however, the Federal Courts have required a showing that the alleged wrongful acts committed ***must be related to the performance of police duties*** before a Section 1983 claim will be upheld.

For instance, in *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990), the survivor of a person shot and killed by a Chicago police officer brought a Section 1983 claim against the police officer, the City of Chicago, and various police department employees alleging that the police officer was acting "under color of state law" merely because he was employed by the Chicago Police Department at the time of the shooting. The facts of *Gibson* are instructive.

In that case, the officer who fired the fatal shot, Arthur Novit, had been previously placed on medical leave and ordered "not to exercise the power of arrest or any other police power" after he was diagnosed with suffering from an atypical impulse control disorder which caused him to use excessive force when carrying out his police duties. For reasons not explained in the Court's opinion, Novit was allowed to retain his service revolver and ammunition. Three months later, Novit had an altercation with Eugene Gibson, another resident in his neighborhood, during which he identified himself as a police office, drew his gun, informed Gibson he was under arrest and then fatally shot him. Following the

4

shooting, Gibson's family brought suit against Novit and the City of Chicago, including claims for violation of Section 1983. The District Court dismissed the Section 1983 claim against Novit on the reasoning that since he had been ordered not to exercise the power of arrest or any other police power prior to the shooting, he had no official police power to misuse and therefore, could not have been acting under color of state law.

In affirming the District court's dismissal of Plaintiff's Section 1983 claim, the Seventh Circuit Court of Appeals noted:

> Novit's mere status as a policeman does not render all of his acts under color of state law. Acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way *related to the performance of police duties*. Likewise, a mere assertion that one is a state officer doesn't necessarily mean that one acts under color of state law. Moreover, whether or not a police officer is off-duty does not resolve the question of whether he or she acted under color of state law. . . . [T]he essential inquiry becomes whether Mr. Gibson has created a triable issue of fact concerning whether Novit's actions related in some way to the performance of a police duty. In this case, there are no dispositive facts in dispute. Instead, the question of whether Novit acted under color of law turns primarily on the legal effect of the March 3, order that directed Novit not to carry a weapon or exercise any police powers. If, as the defendants contend, the order "stripped" Novit of authority to perform any police duties, his act of shooting Gibson could not have been related to the performance of a police duty.

*Id*. at 1516-1517 (emphasis added) (internal citations and footnotes omitted).[1]

---

[1] Compare *Gibson* and *Vanderlinde*, supra, with *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir. 1980). In *Lopez*, Plaintiff brought a Section 1983 claim against

5

As was the case in *Gibson* and *Vanderlinde*, *supra*, the alleged conspiracy to get Carl Ragasa fired and the lies Defendants Sproat, Kaden and Kini allegedly told the Police in order to get Plaintiff Carl Ragasa arrested had nothing whatsoever do with the exercise by Sproat, Kaden or Kini of any *official* power or *official* right bestowed upon them by virtue of their status as employees of the Kauai Fire Department. That being the case, their alleged actions, while arguably tortious, were not done under "under color of state law."[2]

---

an Illinois State Judge after that Judge, who found him sleeping illegally in an apartment the judge owned, held Plaintiff at gunpoint until the police arrived. At Vanderwater's behest, the police arrested Lopez and took him to the Aurora police station to have him booked. At that point, Vanderwater personally charged Lopez with theft and signed a warrant for Lopez's arrest. While Lopez was in his jail cell, Vanderwater, in his capacity as judge, proceeded in the booking area of the police station to arraign, convict and sentence Lopez in abstentia to 240 days in jail after putting Lopez's name on a guilty plea form. In holding that Vanderwater's actions were taken under color of state law, the Seventh Circuit Court of Appeals stated:

> Vanderwater's acts as a prosecutor were intended to make possible, and were an ***essential preliminary*** to, the series of wrongs that culminated in Lopez' illegal conviction and sentence. Vanderwater's prosecutorial acts were taken under color of state law within the meaning of 42 U.S.C. § 1983. . . . Action taken by a state official who is cloaked with ***official power*** and who purports to be acting under color of ***official right*** is state action and is taken under color of state law whether or not the action is in fact in excess of the authority actually delegated to the official under state law.

*Id*. at 1236. (emphasis added) (internal citations omitted).

[2]   By contrast, a Section 1983 claim against a member of the fire department based on the exercise of his or her official powers might be upheld, in theory, if a firefighter refused to put out a house fire because the owner of the house happened to be a member of a minority or religious group that the firefighter didn't like.

6

**B.    Kaden's Alleged "Coercion" of Sage Is Not Supported By Any Admissible Evidence Nor Does It Establish That Ragasa's Arrest Was Accomplished as a Result of any Exercise of any Official Power or Right Possessed by Sproat, Kaden or Kini by Virtue of their Status as Employees of the Kaua'i Fire Department.**

In a desperate attempt to create some issue of fact upon which to hang their Section 1983 claim, Plaintiffs have contended that Carl Ragasa's arrest was the result of a conspiracy on the part of Defendants Sproat, Kaden and Kini to get him fired and that a key element of this plan was to coerce Defendant Ethan Sage into helping them.  In their memo in opposition, Plaintiffs allege:

> Employing KADEN's pre-existing relationship with SAGE and the collective powers of SPROAT, KADEN and KINI in their capacity as high-ranking county officials, SPROAT, KADEN had by February 2002 been exerting pressure on SAGE for a long time to get him to help them get CARL fired from his job.  SPROAT and KADEN made it clear to SAGE that if he failed to help them ensnare CARL, then SAGE would himself be fired.

*See* Plaintiffs Memorandum in Opposition, p. 8.  As discussed below, the foregoing assertion and the "evidence" adduced by Plaintiffs in support of it, is simply insufficient to sustain their Section 1983 claim against County Defendants.

First, in order to prove conspiracy under Section 1983, Plaintiffs must demonstrate the existence of an agreement or meeting of minds to violate a *constitutional right. See Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).  Plaintiffs' contention that Sproat, Kaden and Kini coerced Sage to assist them in their conspiracy to get Ragasa fired, as set forth in the above-quoted

7

paragraph, is insufficient to sustain their Section 1983 claim for the simple reason that the United States Constitution does not contain a right to be free from wrongful termination.

  Second, even if it were true that Sproat, Kaden and Kini were the planners of a conspiracy to get Ragasa fired and that they pressured Sage to help them, that allegation would not, without more, demonstrate (as discussed in Section II(A) above) that Defendants Sproat, Kaden or Kini used any *official* power (and Plaintiff has not identified what that power would be) they possessed by virtue of their status as employees of the Kauaʻi Fire Department to get the Kauaʻi Police Department to exercise its own power to arrest and detain Ragasa.

  Finally, even if the issue of whether Defendants Sproat, Kaden or Kini coerced Sage to help them to get Ragasa fired were relevant to the question of whether Defendants acted under color of state law to violate Ragasa's Constitutional rights, the fact remains that Plaintiffs have adduced no admissible evidence that such coercion ever took place.

  In their opposition, Plaintiffs rely on Exhibits "E", "F", "G" and "H" to the declaration of Mark Zenger (the so-called "Sage Conspiracy Admission Exhibits") in addition to paragraphs 110-114 of Carl Ragasa's Declaration, to support their contention that Sproat and Kaden threatened to fire Sage if he didn't help them to get Ragasa fired. Examination of Plaintiffs' "evidence" however,

8

reveals that it does not support Plaintiffs' contention.

With regard to Exhibits E, F, G, and H to the Zenger declaration, those exhibits do not contain anything to indicate that Sproat, Kaden or Kini ever used their *official* positions to coerce Sage into testifying falsely against Ragasa. At best, those documents contain only conclusory allegations that Sage felt somehow pressured by Chief Kaden to testify against Ragasa. Significantly, Exhibit "H" to Mr. Zenger's declaration, which supposedly memorializes an interview between himself and Sage on October 3, 2002, makes clear that Kaden did not at any time threaten to retaliate against Sage if he failed to cooperate in the alleged conspiracy to get Ragasa fired:

> MZ:   And what did Bob Kaden tell you?
>
> ES:   Bob Kaden told me that if I wanted everything to stop, if I wanted things to be back to how it works, my only option and that if I listen to him everything would be ok.
>
> MZ:   What did he tell you to do?
>
> ES:   He told me to make the statement that I did and for what I told the 1st half of the statement and to press charges against Carl.
>
> \* \* \* \*
>
> MZ:   Did Chief Kaden tell you why he wanted you to lie to the Police?
>
> ES:   Because if I didn't the things between me and Carl would never, would get worse and escalate and that he would not be able to do anything next time.

*See* Exhibit H to Zenger declaration at pp. 0389, 0391.[3]

The second piece of evidence relied upon by Plaintiffs to demonstrate that Sage was coerced into testifying falsely against Ragasa is Ragasa's own self-serving declaration.  At paragraph 111(J), Ragasa testifies that *Sage told him* that Sproat, Kaden and Kini *had told Sage* that they would get him fired from his job if he didn't help them to get Ragasa fired.  This statement is of no probative value because: (1) it constitutes inadmissible hearsay in violation of Rule 56(e); and (2) it directly contradicts sworn testimony given by Carl Ragasa during his deposition taken on January 14, 2005.  During that deposition, Ragasa testified as follows:

> Q: So Ethan told you he was coerced into giving false statement?
>
> A: Yes.
>
> Q: Coerced means he was forced?
>
> A: Yeah.
>
> Q: In what way did Ethan tell you he was forced into making false statements?
>
> A: *<u>I don't know</u>.  In what way? <u>He didn't</u>.*
>
> Q: *<u>He didn't specify</u>?*
>
> A: *<u>No</u>.*

---

[3] Significantly, during his deposition on July 28, 2005, Sage testified *under oath*, that he was not at any time coerced by Sproat or Kaden to testify falsely against Ragasa.  *See* Ex. 7 to County Defendants' Motion for Summary Judgment on Counts VII – IX filed on September 2, 2005 at pp. 226-227.

\* \* \* \*

> Q: Now do you have any personal information that, in fact, shows or supports the statement that Chief Kaden coerced Ethan into giving false statements?
>
> A: No, no, no. Try repeat the question?
>
> Q: Do you have any personal information or knowledge which supports the statement that Chief Kaden coerced Ethan into giving false statements?
>
> A: Personal, no, I don't know.

*See* Deposition of Carl Ragasa, Volume III, taken on January 14, 2005 at pp. 543-545 (attached hereto as Exhibit "1" to the Declaration of Corlis J. Chang, hereinafter "Chang Declaration"). As made clear from the above-cited testimony, paragraph 111(J) of Ragasa's Declaration directly contradicts his prior sworn deposition testimony. Given that fact, paragraph 111(J) must as a matter of law be disregarded. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1138 n.6 (9th Cir. 2000), citing *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262,266 (9th Cir. 1991).

**C.    Ragasa has Failed to Demonstrate that his Constitutional Rights Were Violated**.

As set forth in Defendants' moving papers, a state official is *presumed* to have qualified immunity in the absence of a clear showing *by Plaintiff* that his Constitutional rights were violated by that state official. In this case, Plaintiffs simply argue, without any analysis whatsoever, that "whatever legal burden there might be to overcome the presumption of qualified immunity, Plaintiffs have

11

clearly met it and then some". *See* Plaintiffs' Opposition Memorandum, p. 21. Obviously, such a conclusory statement constitutes neither argument nor evidence and as such, Plaintiffs' opposition with respect to Defendants' motion for summary judgment based on the doctrine of qualified immunity must be deemed waived. *See Citizens Communications Co. v. Trustmark Ins.*, 303 F.Supp.2d 197 (D. Conn. 2004 (court granted defendants' motion for summary judgment as to all of the causes of action that were unopposed).

> **D.   Ragasa has Failed to Point to any Facts Showing that his Alleged False Arrest Resulted from the Enforcement of an Unconstitutional Government Policy or Custom.**

As set forth in County Defendants' moving papers, neither the County nor the Kaua'i Fire Department can be held liable under Section 1983 in the absence of a showing by Plaintiff that his alleged false arrest resulted from the execution of an official governmental policy or custom. *See Meehan v. County of Los Angeles*, 856 F.2d 102 (9th Cir. 1988).

In their reply, Plaintiffs contend that their claims against the County must be allowed to go forward because they have shown that: (1) the "custom" of the County is to ignore USLA training certification requirements and thereby endanger public safety; and (2) the County was well aware of Kaden, Sproat and Kini's "criminal activities" yet did nothing about it. *See* Plaintiffs' Opposition, p. 22. Plaintiffs' arguments miss the point.

In order to sustain a *Section 1983* claim (as opposed to a garden variety tort claim) against the County, Plaintiffs must show that their alleged injuries resulted from an existing, *unconstitutional* policy which can be attributed to a local government policymaker. *See Meehan*, *supra*, at 107. In this case, the only "custom" alleged is the County's alleged "custom" of ignoring USLA training certification requirements. Plaintiffs cite to Ragasa's own letter as "proof" of violation of such "custom." (Exh. A to Plaintiffs' Opposition). As the Plaintiffs are well aware, the USLA letter in response dated November 10, 2003, said that "the National Certification Committee discussed the complaint in detail and concluded that the Kauai Fire Department has appropriately followed the requirements of the USLA lifeguard agency certification program, and based on all information available to us, remains in compliance." At deposition, Ragasa acknowledged receipt of the letter, but refused to accept its contents. (Ragasa Depo., Vol. II, 285:10-286:1; 294:21-24; 296:4-6, 15-20; 304:13-20; 305:25-306:20, excerpts attached hereto as Exhibit "2" to the Chang Declaration; USLA letter attached hereto as Exhibit "3" of the Chang Declaration.) Clearly, there is no basis to state there was a "custom" of ignoring USLA requirements. Moreover, even if there were such a "custom," it would not in any way be "unconstitutional;" an essential prerequisite to the maintenance of any Section 1983 action against the County.

13

With respect to Sproat, Kaden and Kini's alleged "criminal activities," contrary to what they alleged in their opposition, Plaintiffs have no proof that the County was aware of such activity (assuming it existed), much less had an official policy of condoning it. This fact is fatal to Plaintiffs' Section 1983 against the County and the Kauaʻi Fire Department because, as stated by the Court in *Meehan*, *supra*:

> Local government liability under section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing *final policy* with respect to the subject matter in question.

*Meehan*, 856 F.2d 102 at 107, citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986) (emphasis in original). In this case, Plaintiffs have no evidence showing that the County deliberately chose to follow any policy, much less an *unconstitutional* policy with regard to Sproat, Kaden and Kini's alleged wrongful conduct.

## III. <u>CONCLUSION</u>

For all of the reasons stated herein and in County Defendants' Civil Rights Claims Motion, County Defendants respectfully submit that Plaintiffs' Section 1983 claims should be dismissed.

DATED: Honolulu, Hawai'i, January 13, 2006.

                     /s/ Corlis J. Chang
                    CORLIS J. CHANG
                    BARBARA A. PETRUS
                    EDMUND K. SAFFERY
                    KIMBERLY J. KOIDE

                    Attorneys for Defendants
                    COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA AND KANANI RAGASA,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI, AND ETHAN SAGE,<br><br>Defendants. | CV. NO. 03-00540 BMK<br><br>CERTIFICATE OF SERVICE |

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been duly served upon the following in the manner indicated below and on the date of filing.

1109437.1

| NAME(S) | U.S. MAIL POSTAGE PREPAID | HAND DELIVERY | CM/ECF |
|---|---|---|---|
| Mark R. Zenger, Esq.<br>Donna E. Richards, Esq.<br>RICHARDS & ZENGER<br>3016 Umi Street, Suites 204 & 211B<br>Lihue, Kauai, HI 96766<br><br>Attorneys for Plaintiffs | ☒ | ☐ | ☐ |
| Darwin L. D. Ching, Esq.<br>ASB Tower, Suite 1008<br>1001 Bishop Street<br>Honolulu, HI 96813<br><br>Attorney for Defendant<br>ETHAN SAGE | ☒ | ☐ | ☐ |

DATED: Honolulu, Hawaiʻi, January 13, 2006.

   /s/ Corlis J. Chang
CORLIS J. CHANG
BARBARA A. PETRUS
KIMBERLY J. KOIDE

Attorneys for Defendants
COUNTY OF KAUAʻI, KAUAʻI FIRE
DEPARTMENT, DAVID SPROAT, ROBERT
KADEN AND SIDNEY KINI