GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

| | |
|---|---|
| CORLIS J. CHANG | 3539-0 |
| CCHANG@GOODSILL.COM | |
| BARBARA A. PETRUS | 3238-0 |
| BPETRUS@GOODSILL.COM | |
| EDMUND K. SAFFERY | 5860-0 |
| ESAFFERY@GOODSILL.COM | |
| KIMBERLY J. KOIDE | 8256-0 |
| KKOIDE@GOODSILL.COM | |

Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawai'i  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Defendants
COUNTY OF KAUA'I, KAUA'I FIRE
DEPARTMENT, DAVID SPROAT, ROBERT
KADEN AND SIDNEY KINI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CARL RAGASA AND KANANI RAGASA,<br><br>                    Plaintiffs,<br><br>       vs.<br><br>COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI, AND ETHAN SAGE,<br><br>                    Defendants. | CV. NO. 03-00540 BMK<br><br>DEFENDANTS COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER REQUESTING ADDITIONAL BRIEFING FILED 1/25/06; CERTIFICATE OF SERVICE<br><br>HEARING: January 24, 2006<br>TIME:  10:00 a.m.<br>JUDGE: Hon. Barry M. Kurren<br>**TRIAL DATE:  November 14, 2006** |

**DEFENDANTS COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER REQUESTING ADDITIONAL BRIEFING FILED 1/25/06**

Defendants COUNTY OF KAUA'I ("County"), KAUA'I FIRE DEPARTMENT ("KFD"), DAVID SPROAT ("Sproat"), ROBERT KADEN ("Kaden") and SIDNEY KINI ("Kini") (Sproat, Kaden and Kini collectively referred to herein as "Employee Defendants") (County, KFD and Employee Defendants collectively referred to herein as "County Defendants") by and through their counsel, Goodsill Anderson Quinn & Stifel, A Limited Liability Law Partnership LLP hereby submit their Supplemental Brief pursuant to the Court's Order filed on January 25, 2006.

DATED: Honolulu, Hawai'i, February 8, 2006.

/s/ Corlis J. Chang
CORLIS J. CHANG
BARBARA A. PETRUS
EDMUND K. SAFFERY
KIMBERLY J. KOIDE

Attorneys for Defendants
COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI

## I. INTRODUCTION

This Court requested further briefing from the parties addressing the following: "(1) whether a 42 U.S.C. § 1983 claim based on First Amendment retaliation has been stated in this case; and (2) if so, in light of *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), what specific facts and evidence have been introduced to support or refute this claim." Court Order filed on January 25, 2006.

As will be shown, Plaintiffs have not adduced any competent evidence in support of their First Amendment retaliation claim. Accordingly, County Defendants respectfully submit that Plaintiffs' claims should be dismissed.

## II. ARGUMENT

### A. Plaintiffs Have Failed to Meet the Elements of Proof For A First Amendment Retaliation Cause of Action.

An examination of Plaintiffs' Complaint filed on October 3, 2003 ("Complaint") and Plaintiff Carl Ragasa's ("Ragasa") deposition testimony make clear that this is not a case about infringement upon his freedom of speech rights, but instead, is a case about infringement upon his *liberty* rights. Plaintiffs Carl Ragasa and Kanani Ragasa's Memorandum in Opposition to Defendants County Of Kaua'i, Kaua'i Fire Department, David Sproat, Robert Kaden and Sidney Kini's Motion for Summary Judgment as to Counts I-IX, filed January 7, 2006 ("Plaintiffs' Opposition"), p. 19 ("Moreover, the main right that CARL was deprived of was that of liberty"). Indeed, the sole reference in his Complaint to

1203196.1

infringement upon his freedom of speech rights is found buried in paragraph 58 where he recites a litany of various rights which County Defendants allegedly infringed upon. *See* Complaint attached as Exhibit 1 to County Defendants' Motion for Summary Judgment on Counts III-VI of Plaintiffs Carl Ragasa and Kanani Ragasa's Complaint Filed on October 3, 2003 (Conspiracy, Respondeat Superior, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress), filed herein on September 2, 2005 ("Conspiracy Claims Motion"). Even assuming, however, that Plaintiffs properly alleged a First Amendment retaliation cause of action, Plaintiffs have not adduced evidence that County Defendants are liable.

In reviewing the case of *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), the Ninth Circuit Court of Appeals held that "[i]n order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Id.* at 973.

Plaintiffs' claim that County Defendants retaliated against Ragasa for exercising his First Amendment right to free speech lacks support and should not be afforded any weight. In fact, the evidence adduced by the Plaintiffs is to the contrary.

2

### 1. Ragasa Did Not Engage In Protected Speech.

Plaintiffs have not adduced evidence that Ragasa engaged in any protected speech.  According to the *Coszalter* case, an employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern."  *Coszalter*, 320 F.3d at 973 (*citing Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).  More specifically, "speech that concerns 'issues about which information is needed or appropriate to enable members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection."  *Id.  See also, McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983).

In contrast, speech that deals with individual personnel disputes that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of "public concern."  *Id*.  Thus, the determination of whether an employee's speech involves issues of public concern is to be made with reference to the content, form and context of the speech.  *Id*.  *See also Connick v. Myers*, 461 U.S. 138 (1983) (discharge of former assistant district attorney did not violate attorney's constitutionally protected right of free speech).

In the *Connick* case, the United States Supreme Court held that the

plaintiff did not properly set forth a First Amendment retaliation claim. 461 U.S. at 138. The plaintiff in the *Connick* case was a former assistant district attorney who was transferred to a different section of the criminal court. *Id*. In opposing her transfer, the plaintiff expressed her views to several of her supervisors and thereafter prepared a questionnaire which she distributed to other attorneys in the office[1]. *Id*. In dismissing the plaintiff's First Amendment retaliation claim, the United States Supreme Court recognized that the questions posed in the questionnaire did not fall under the rubric of matters of "public concern."

       The Court recognized that while discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of the plaintiff's questions was not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors. *Id*. at 148. The Court noted:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark and certainly every criticism directed at a public official would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the ***First Amendment does not require a public office to be run as a roundtable for employee***

---

[1] The questionnaire that the plaintiff distributed to the other attorneys concerned the office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressured to work in political campaigns. *Connick*, 461 U.S. at 138. Except for the question regarding pressure upon employees to work in political campaigns, the questions posed in the questionnaire did not fall under the rubric of matters of "public concern." *Id*.

4

*complaints over internal office affairs*.
*Id*. (Emphasis added).

Here, in the Complaint and at Ragasa's deposition, the only mention of a claim related to speech arises out of his allegations that Employee Defendants formed a belief that Ragasa was going to report their alleged illegal actions to the authorities and thus engaged in a conspiracy to cause him to be terminated and to damage his reputation within the community. *See* Complaint at ¶¶ 17-24, 27, 36; *see also*, Carl Ragasa's Deposition ("Ragasa Depo.") testimony, attached as Exhibit 3 to the Conspiracy Claims Motion, Ragasa Depo., Vol. I, 183:1-185:17; 186:2-187:4, 16-20.

Ragasa was questioned in detail about each of the allegations set forth against the Employee Defendants (Complaint at ¶¶ 17-19)[2] which he claims the County and KFD should have known and done something about. *See* Complaint at ¶¶ 37-39. It was apparent from Ragasa's answers that he had no basis to state he had credible information concerning any of the allegations made against the Employee Defendants[3]. Moreover, Ragasa admitted he had no basis for asserting

---

[2] Ragasa's allegations, in summary, are (1) Sproat engaged in theft, terroristic threatening, illegal conversion of County property and money laundering; (2) Kaden engaged in conversion, money laundering, illegal drug use and drug trafficking; (3) Kini engaged in conversion and money laundering.

[3] Ragasa's information concerning Sproat's alleged wrongdoing was based on the things which he "heard" from others, but of which had no personal knowledge. *See* Ragasa Depo., Vol. I, 137:19-139:20; 139:21-142:13; 142:18-143:19. With respect to Kaden, he could not definitively identify the sources who told him about wrongful activity but admitted he never witnessed any wrongdoing himself. *Id.* at

5

the County received any information about the alleged wrongdoing of Employee Defendants.  *See* Ragasa Depo. at 152:15, 153:7, 155:1-7.

***Importantly, Ragasa never told anyone that he was going to report these alleged acts of wrongdoing to the authorities.***  *Id.* at 185:18-186:1; 187:5-188:10.  Since Ragasa never told anyone that he was intending to report these alleged wrongdoings by the Employee Defendants he has no reasonable basis to assert that the Employee Defendants formed a belief that he was going to the authorities to report these alleged wrongdoings.

Moreover, Ragasa never actually told anyone about these alleged illegal activities of the Employee Defendants.  Ragasa Depo., Vol, I, 185:18-23.

Since Ragasa's knowledge of the alleged wrongdoings by Employee Defendants were never communicated to ***anyone***, and further, do not involve matters of public concern, such knowledge cannot be considered speech, much less "protected speech."

Furthermore, none of the declarations in support of Plaintiffs' Opposition provide admissible evidence that Ragasa engaged in any protected speech[4].

---

146:12-151:14.  With respect to Kini, Ragasa likewise could not adduce any evidence concerning conversion of County resources.  He further admitted he had no knowledge of Kini committing acts of money laundering.  *Id.* at 153:16-154:17.
[4] For example, one of Ragasa's claims of wrongful activity which he was going to report was Kaden's alleged heroin trafficking.  The Declaration of Terry Chung,

Neither does Ragasa's self-serving declaration[5] adduce evidence that he engaged in protected speech. At most, Plaintiffs have only stated claims that Ragasa confronted Kaden over a year before the arrest and told him that "he does not know what he is doing and that he is endangering lives." Declaration of Carl Ragasa (hereinafter "Ragasa Decl.") at ¶ 13. Moreover, in paragraph 29 of the Ragasa Decl., Ragasa stated that he "publicly and often objected to Kaden and Sproat having Kini involved with the Water Safety Program in any way, shape or form," and that he shared his "thoughts and feelings about Kini with others in the Water Safety Program." Ragasa Decl. at ¶ 29. While Ragasa may have shared his beliefs, such statements do not constitute protected speech. Similar to the *Connick* case, Ragasa's criticism regarding Kaden and Kini's job performance are personnel matters that do not fall under the rubric of matters of "public concern."

As an initial matter, Ragasa does not explain how he "publicly" objected or to whom he directed his objections. This statement is conclusory and it

---

(which consists largely of inadmissible hearsay), related that Kaden was told by Chung that Ragasa was aware of his heroin trafficking. *See* Declaration of Terry Chung ("Chung Declaration") at ¶ 13. However, Ragasa himself admitted that this conversation occurred *after* he had been arrested. Moreover, Ragasa admitted he did not tell anyone he was going to the authorities about this allegation of drug trafficking. Ragasa Decl. Vol. I, 186:2-187:8. Since the conversation occurred after Ragasa was arrested, it could not have formed the basis of the "protected speech" which resulted in his arrest, which is his only colorable claimed adverse employment action.

[5] County Defendants reiterate their argument that Ragasa's own Declaration may not contradict his sworn deposition testimony. *See* County Defendants' Reply Memorandum to Conspiracy Claims Motion, pp.8-9.

7

should be stricken in its entirety. FED. R. CIV. PROC. 56(e). Furthermore, Ragasa made no effort to *inform the public* of his opinion that Kaden and Kini were not qualified to do their jobs[6]. Given the history of the personal conflicts which Ragasa alleges existed between Ragasa and the Employee Defendants, it appears Ragasa's criticism was fueled more by his animosity, not his concern for the public's safety. *See* Defendants' Motions for Summary Judgment as to Counts I-IX. As Ragasa's statements do not involve matters of "public concern," they should not be warranted any First Amendment protection.

### 2. Defendants Did Not Take Any Adverse Employment Action Against Ragasa.

Plaintiffs have failed to articulate any adverse employment actions taken by Defendants against Ragasa.

Plaintiffs' contentions as to the adverse employment actions were summed up in the Complaint. *See* Complaint at ¶ 28. Plaintiffs contend that Employee Defendants (1) accused Ragasa of violating Water Safety Bureau (WSB) standard operating procedures, (2) drafted a false reprimand against Ragasa, and (3) made it difficult for Ragasa to conduct water safety training sessions. *Id*. at ¶28.

---

[6] The majority in the *Connick* case emphasized that the speech at issue "touched upon matters of public concern in only a most limited sense; it dealt primarily with a personal grievance concerning internal office policy and *was not aired publicly*." (Emphasis added). *Allen v. Scribner*, 812 F.2d 426, 432 n. 12 (9th Cir. 1987).

At deposition, Ragasa admitted he received *no* reprimands for alleged WSB violations. Ragasa Depo., Vol. I, 188:12-193:5. Furthermore, the one reprimand Ragasa was to have received was voluntarily withdrawn by KFD and Kaden once it was learned he was not at fault for the incident. *See* Deposition of Robert Kaden attached as Exhibit 6 to the Conspiracy Claims Motion, ("Kaden Depo."), Vol. I, 40:4-21. *See also,* Exhibit "D" to Plaintiffs' Opposition, p. 4 ("BC Kaden requested that reprimand be rescinded"). Finally, Ragasa admitted that he did not conduct water safety training sessions, but was upset because the water safety operations were not conducted the way they were prior to the takeover by KFD. Ragasa Depo., Vol. I, 194:6-196:13.

The *Coszalter* case defines "adverse employment actions" as actions taken by the government-employer which are "reasonably likely to deter the plaintiff-employee from engaging in protected activity under the First Amendment." 320 F.3d at 976. The court explained that the goal is to prevent or redress actions by a government employer that "chill" the exercise of protected First Amendment rights. *Id*. at 974-975; *see also Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) (court dismissed plaintiff's First Amendment retaliation claim where the alleged adverse employment actions included only minor acts such as "bad-mouthing").

In the *Nunez* case, the court held that the plaintiff did not set forth

9

enough evidence to support his First Amendment retaliation claim as he suffered no adverse employment action – the plaintiff only presented evidence that he was bad-mouthed and verbally threatened.  320 F.3d at 875.  In granting the defendant's motion for summary judgment, the court explained that minor acts such as "bad-mouthing" cannot reasonably be expected to deter protected speech and therefore do not violate an employee's First Amendment rights.  *Id*.

Similarly, in *Burch v. Naron*, 333 F. Supp. 2d 816 (W.D. Ar. 2004), the court dismissed the plaintiff-arrestee's § 1983 action against the county and the sheriff's department deputies for violations of his constitutional rights.  The *Burch* court explained that the evidence does not show that the actions attributed to the Sheriff's Department were sufficiently egregious to "chill a person of ordinary firmness from continuing to speak out" where probable cause existed for the arrest.  *Id*. at 827.  The court noted that the outrage and inconvenience that the plaintiff alleged as a result of the Sheriff's Department's actions would not chill a person of ordinary firmness from continuing to speak out.  *Id*.

In addition to the aforementioned allegations of retaliation, County Defendants anticipate that Plaintiffs will contend that Ragasa suffered the following adverse employment actions:  (1) being issued a fraudulent reprimand (discussed previously); (2) being falsely arrested; (3) being "bad-mouthed" or verbally threatened, and (4) being asked to take a paid leave of absence.

10

Plaintiffs' arguments are unsupported and should be disregarded. With respect to the alleged fraudulent reprimand issued by Kaden, Ragasa contradicts himself in his own 44 page declaration attached to Plaintiffs' Opposition. Ragasa states on the one hand, that Kaden *filed* at least one fraudulent reprimand against him, *see* Ragasa Decl. at ¶ 33, but on the other, that he has a clean personnel file and has never sustained any oral or written reprimand of any kind. *See* Ragasa Decl. at ¶ 6.

Moreover, Plaintiffs' contention that Ragasa's March 22, 2002 arrest constitutes an adverse employment action is likewise unsupported. In the present instance, the Kaua'i Police Department found sufficient probable cause to arrest Ragasa. *See* County Defendants' Motion for Summary Judgment on Counts VII-IX of Plaintiffs Carl Ragasa and Kanani Ragasa's Complaint Filed on October 3, 2003 (False Imprisonment, Defamation and Malicious Prosecution), filed herein on September 2, 2005[7]. Consequently, similar to the *Burch* case, the arrest alone is not conduct which is sufficiently egregious to chill an individual's speech in violation of the First Amendment. *See Burch*, 333 F. Supp. 2d 827.

---

[7] Michael Soong was the County Prosecutor for Kauai at the time Ragasa's criminal case was charged. (Deposition of Michael Soong, hereinafter "Soong Depo.," 4:25-5:3;6:4-9; the Soong Depo has been attached as Exhibit "I" to Plaintiffs' Opposition). Mr. Soong dismissed the case against Ragasa because he felt that the dispute was more of an internal matter that should be handled within the fire department. *Id.* at 6:10-7:24. He was *not* finding that there was no probable cause. *Id.*

County Defendants also anticipate that Ragasa will contend that he heard from others that Employee Defendants "bad-mouthed" and/or made "verbal threats" against him[8]. Moreover, he states in paragraph 134 of the Ragasa Decl. that he was "falsely accused [ ] of being a substance abuser and a chronic alcoholic." Statements that Ragasa "heard" from others concerning what the Employee Defendants said about him is hearsay and therefore inadmissible. In addition, Ragasa's contention that he was "falsely accused" is a conclusory opinion and should be disregarded. Consequently, based on the holding in the *Nunez* case, such minor acts do not constitute adverse employment actions.

Finally, County Defendants anticipate that Ragasa will contend that he suffered an adverse employment action in May of 2005 when he was given a leave of absence **with pay**[9]. *See* Ragasa Decl. at ¶ 43[10]. According to the standard set forth in the *Coszalter* case, receiving "paid time off" is not an adverse employment action since it is not an act which would sufficiently "chill" an individual's speech. *See Coszalter*, 320 F.3d at 976 ("adverse employment actions" is defined as

---

[8] In his declaration, Ragasa states that Sage told WSO Hunter that among other things, Kaden and Sproat told him that if he did not falsely implicate Ragasa, Kaden and Sproat would have him fired. *See* Ragasa Decl.

[9] It should be noted that the reasons for placing Ragasa on leave of absence "with pay" is a current County personnel issue which may not be disclosed.

[10] Ragasa states in his declaration that "in May 2005, the County and KFD ordered me to take a force leave with pay under the pretense of having to take care of a substance abuse problem that I simply never had." Ragasa Decl. at ¶ 135. Ragasa makes this bald assertion and does not provide any facts in support of his belief.

actions taken by the government-employer which are "reasonably likely to deter the plaintiff-employee from engaging in protected activity under the First Amendment").

Accordingly, since Ragasa suffered no adverse employment action, his First Amendment retaliation claim fails.

### 3. Plaintiffs Failed To Adduce Evidence That Ragasa's Speech Was A Substantial Or Motivating Factor For The Adverse Employment Action.

Plaintiffs' claim fails as they have adduced no evidence that Ragasa's speech was a substantial or motivating factor for the alleged adverse employment actions taken by County Defendants.

The Ninth Circuit in the *Coszalter* case recognized ways in which a plaintiff may demonstrate that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions[11]. *Coszalter*, 320 F.3d at 977 (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001))[12].

---

[11] (1) A plaintiff can introduce evidence regarding the proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury could logically infer that the plaintiff was terminated in retaliation for his speech; (2) a plaintiff can introduce evidence that his employer expressed opposition to his speech, either to him or to others; or (3) the plaintiff can introduce evidence that his employer's proffered explanations for the adverse employment action were false and pre-textual. *Coszalter*, 320 F.3d at 977 (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001)).

[12] It should be noted that unlike our case, in the *Coszalter* case, the defendants did not dispute that they had knowledge of plaintiff's speech.

13

Here, there is no evidence that Ragasa suffered any adverse employment action. However, assuming *arguendo* that the alleged actions taken by Employee Defendants amount to adverse employment actions, Plaintiffs are unable to show that Ragasa's criticism was a substantial or motivating factor in causing the alleged adverse employment actions.

With respect to the alleged fraudulent reprimand, there is no evidence that Kaden filed the reprimand in retaliation for Ragasa's criticism of Kaden's work performance. In fact, the one reprimand Ragasa alleged to have received was voluntarily withdrawn by KFD and Kaden once it was learned that he was not at fault for the incident. *See*, *supra*, Section II.A.3.

Moreover, there is no nexus between Ragasa's protected speech and his subsequent arrest. Ragasa only expressed his opinions to members of the Kauaʻi Fire Department – the police officers that arrested him had no knowledge of his concerns. Additionally, (as discussed previously), the Kauaʻi Police Department found sufficient probable cause to arrest Ragasa. *See supra*, Section II.A.2. Therefore, Ragasa's speech could not have been a substantial or motivating factor in causing his arrest.

Finally, a majority of the statements contained in the Ragasa Decl. are based on third-hand information and are inadmissible hearsay statements. However, even assuming such statements are admissible, "bad-mouthing" is not

14

considered an adverse employment action that would "chill" a person from exercising his or her First Amendment rights.[13]

## III. CONCLUSION

For all of the reasons stated herein and in County Defendants' Motions as to Counts I-IX, County Defendants respectfully submit that Plaintiffs' claims should be dismissed.

DATED: Honolulu, Hawai'i, February 8, 2006.

/s/ Corlis J. Chang
CORLIS J. CHANG
BARBARA A. PETRUS
EDMUND K. SAFFERY
KIMBERLY J. KOIDE

Attorneys for Defendants
COUNTY OF KAUA'I, KAUA'I FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI

---

[13] In the Ragasa Decl., Ragasa states that he was told by others that Kaden and Sproat "bad-mouthed" him and also made verbal threats against him.