# ORIGINAL

DONNA E. RICHARDS, #7625
MARK R. ZENGER, #3511
RICHARDS & ZENGER
Attorneys at Law, A Law Corporation
3016 Umi Street, Suites 204 and 212
Lihue, Hawaii 96766
Telephone: (808) 632-0723
Facsimile: (808) 632-0724

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 0 8 2006

at 11 o'clock and 24 min. P M
SUE BEITIA, CLERK

Attorneys for Plaintiffs
CARL RAGASA and KANANI RAGASA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA and KANANI RAGASA, | ) CIVIL NO. 03-00540 BMK |
| Plaintiffs, | ) **PLAINTIFFS CARL RAGASA and** |
| vs. | ) **KANANI RAGASA'S SUPPLEMENTAL** |
| | ) **MEMORANDUM IN OPPOSITION TO** |
| | ) **DEFENDANTS COUNTY OF KAUAI,** |
| | ) **KAUAI FIRE DEPARTMENT, DAVID** |
| COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI and ETHAN SAGE, | ) **SPROAT, ROBERT KADEN AND** |
| | ) **SIDNEY KINI'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT ON COUNTS** |
| | ) **I - IX OF PLAINTIFFS CARL RAGASA** |
| | ) **and KANANI RAGASA'S COMPLAINT** |
| Defendants. | ) **FILED ON OCTOBER 3, 2003;** |
| | ) **CERTIFICATE OF SERVICE** |
| | ) |
| | ) **HEARING** |
| | ) **DATE: January 24, 2006** |
| | ) **TIME: 10:00 A.M.** |
| | ) **JUDGE: Barry M. Kurren** |
| | ) **TRIAL DATE: November 13, 2006** |

**PLAINTIFFS CARL RAGASA and KANANI RAGASA'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I - IX OF PLAINTIFFS CARL RAGASA and KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003**

Pursuant to the "ORDER REQUESTING ADDITIONAL BRIEFING" issued herein on January 25, 2006, Plaintiffs CARL RAGASA (hereinafter "CARL") and KANANI RAGASA (hereinafter "KANANI") (collectively referred to as the "RAGASAS") hereby submit their "SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I - IX OF PLAINTIFFS CARL RAGASA and KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003."

### A.   PLAINTIFFS HAVE STATED A 42 SECTION U.S.C. 1983 CLAIM BASED ON FIRST AMENDMENT RETALIATION IN THIS CASE.

The Complaint it its current form consists of nine claims. Counts I through 9 of the Complaint contains 31 pages and 103 allegations. The first of these claims is for violation of Section 1983. It states:

## "FIRST CAUSE OF ACTION

"55.  Plaintiffs incorporate herein by reference the allegations contained in the preceding paragraphs.

56.    Defendants COUNTY, KFD, SPROAT, KADEN, KINI and SAGE acted intentionally, recklessly and/or wilfully and wantonly in making the Criminal Harassment Charges against Plaintiff.

57.    As a direct and proximate result of the above-referenced intentional, reckless, wilful and wanton conduct and the unlawful and malicious actions against Plaintiff by Defendants COUNTY, KFD, SPROAT, KADEN, KINI and SAGE which they committed under color of law and under their authority as firefighters and water safety officers, Plaintiffs have both sustained severe and permanent injuries of body and mind, including but not limited to extreme emotional distress, have lost and will continue to lose wages and have incurred and will continue to incur medical and related expenses.

58.    As a direct and proximate result of the above-referenced intentional, systematic and continuous misconduct of Defendants COUNTY, KFD, SPROAT, KADEN, KINI and SAGE committed under color of law, and under SPROAT's authority as a the Chief of KFD, under KADEN's authority as Battalion Chief of the Water Safety Bureau, under KINI's authority as Training Supervisor of the Water Safety Bureau, and under SAGE's authority as a Water Safety Officer, Plaintiff was deprived of his constitutional rights, including but not limited to the right to be secure in his person against unreasonable seizure of his person, cruel and unusual punishment and **freedom of speech** in violation of the **First**, Fourth and Fourteenth **Amendments of the Constitution of the United States.**

59.    The above referenced acts of Defendants COUNTY, KFD, SPROAT, KADEN, KINI and SAGE constitute a violation of 42 U.S.C. §1983.

3

60.   The above-referenced acts of Defendants COUNTY, KFD, SPROAT, KADEN, KINI and SAGE entitle Plaintiffs to an award of punitive damages." **[Emphasis Added].**

(Please See the Complaint filed herein on October 3, 2003, attached as Exhibit "1" to the Chang Declaration, at Pages 19-20, ¶ 55-60 ).

Plaintiffs readily concede that the fifty four (54) allegations that precede the 1983 Claim are weighted more heavily toward the Fourth and Fourteenth Amendments and less toward the First Amendment.  At the same time, those allegations, in and of themselves, confer jurisdiction upon this Court in this case independent of the First Amendment grounds.  However, for the reasons set forth hereinbelow, the Complaint sets forth adequate allegations to support a First Amendment claim that is a wholly independent basis to support statutory federal court jurisdiction over this case.[1]

Federal Rules of Civil Procedure("FRCP") Rule 8 states, in pertinent part, that:

"General Rules of Pleading.

---

[1]Assuming that this court continues to keep jurisdiction of this case upon disposition of the pending motions for summary judgment, RAGASAS will seek to amend the Complaint pursuant to FRCP Rule 15(a) within a reasonable time thereafter.

**(a) Claims for Relief.**

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded...

**(e) Pleading to be Concise and Direct; Consistency**

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

**(f) Construction of Pleadings**

All pleadings shall be so construed as to do substantial justice."

The Complaint fundamentally alleges that the individual defendants, and government employees all, conspired to get CARL arrested and fired because he had information about their respective criminal activities and that he opposed the training methods of and the backgrounds of the KFD personnel thrust upon him

when Mayor Kusaka suddenly decided in 2000 to mandate that the Water Safety Program move from the Department of Parks and Recreation and become a part of and subordinate to the chain of command in KFD.

Through the misconduct of and retaliation against CARL by those defendants as set forth in Paragraphs 1 through 54 of the Complaint, the defendants infringed upon a variety of federally protected rights, again including CARL's rights to free speech under the first amendment. Pursuant to the pending Court order, the RAGASAS now focus, to the extent possible, on those allegations that have only to do with the First Amendment.

Paragraph 1 of the Complaint puts defendants on notice that the Complaint deals with the defendants having violated Plaintiffs' civil rights and provides them with the statutory basis therefore. (Please See Complaint at Page 20, ¶ 1 ).

Paragraph 29 of the Complaint puts defendants on notice that the circulation of the two written surveys to twenty (20) Water Safety Officers is an issue in this case. CARL signed both of these petitions as an exercise of his right to free speech. (Please See the Complaint at Page 10, ¶ 29 and Exhibit "A" and Exhibit "B"[2] to the Complaint at the line enumerated "10").

---

[2]Through clerical error, Exhibit "A" and Exhibit "B" to the Complaint are the same for petition. CARL signed both petitions as an exercise of his free speech. Counsel for all parties had made representations on the record during the

Paragraph 30 of the Complaint describes the protected speech set forth in Exhibit "A" to the Complaint. (Please See the Complaint at Page 10, ¶ 30 and Exhibit "A" to the Complaint at the line enumerated "10").

Paragraph 31 incorporates the protected speech set forth in Exhibit "A" into the allegations of the Complaint itself. (Please See the Complaint at Page 10, ¶ 31 and Exhibit "A" to the Complaint at the line enumerated "10").

Paragraph 32 of the Complaint describes the protected speech set forth in Exhibit "B" to the Complaint. (Please See the Complaint at Pages 10-11, ¶ 32 and Exhibit "B" the Complaint at the line enumerated "10"[3]).

Paragraph 33 incorporates the protected speech set forth in Exhibit "B" into the allegations of the Complaint itself. (Please See the Complaint at Page 10-11, ¶ 33 and Exhibit "B" to the Complaint at the line enumerated "10").

Paragraph 35 of the Complaint states that:

"In or about early 2001, Defendants SPROAT, KADEN, KINI and SAGE formed the belief that Plaintiff was, in part, responsible for the Water Safety Bureau having circulated the first and second surveys."

---

taking of CARL's deposition in late 2004 that the parties would stipulate to correct this error by allowing the Complaint to be amended prior to trial.

[3]Again, Exhibit "B" is in error. Assuming that this court continues to keep jurisdiction of this case upon disposition of the pending motions for summary judgment, RAGASAS will seek to amend the Complaint pursuant to FRCP Rule 15(a) within a reasonable time thereafter.

(Please See the Complaint at Page 11, ¶ 35)

Paragraph 35 clearly and unambiguously notifies the defendants of the precise statements of protected speech that are, in part, at issue in the case and that their belief that CARL uttered it plays a role in the 42 U.S.C. §1983 conspiracy set forth within the four corners of the Complaint. The next paragraph clearly delineates the nature, membership and scope of said 42 U.S.C. §1983 conspiracy, It states:

> "In or about early 2001, Defendants SPROAT, KADEN, KINI and SAGE, while acting under color of law, separately and in concert with each other, engaged in and conspired to cause Plaintiff to be terminated from his position as a Water Safety Officer and to damage Plaintiff's credibility and reputation within the community." (Please See the Complaint at Page 11, ¶ 36).

Paragraphs 42 a. through d. of the Complaint put defendants on notice that CARL is alleging that the defendants conspiracy of retaliation was in part due to his exercise of free speech. According to the Complaint, CARL exercised his right of free speech with respect to the training and certification procedures of open water training as they existed in March 20, 2002[4]. There, when KINI

---

[4]Subsequent investigation and discovery showed that the protected speech uttered by CARL in these paragraphs actually occurred in February 2002. Again, assuming that this court continues to keep jurisdiction of this case upon disposition of the pending motions for summary judgment, RAGASAS will seek to amend the Complaint pursuant to FRCP Rule 15(a) within a reasonable time thereafter and conform it to the facts learned subsequent to the filing of the

ordered CARL to submit to open ocean lifesaving training under KINI's supervision and tutelage, CARL uttered protected speech when he said that KINI must display to him proper documentation to show that KINI was legally certified to train CARL and CARL's subsequent statement that he would not allow KINI to train him in open ocean lifesaving because KINI was not certified. (Please See the Complaint at Pages 13-14, ¶¶ 42 a. through d. ).

Likewise, Paragraphs 43 a. through d. of the Complaint puts defendants on notice that CARL is alleging that the defendants conspiracy of retaliation was in part due to his exercise of free speech. According to the Complaint, CARL again exercised his right of free speech with respect to the training and certification procedures of open water, this time as they existed in March 20, 2002[5]. There, when KINI ordered CARL to submit to open ocean lifesaving training under KINI's supervision and tutelage, CARL uttered protected speech when he said that KINI must display to him proper documentation to show that KINI was legally certified to train CARL and CARL's subsequent statement that he would not allow

_____

Complaint.

[5]As was the case with the preceding paragraphs "42 a through d.", subsequent investigation and discovery showed that the protected speech uttered by CARL in these paragarphs actually occurred in February 2002 .

KINI to train him in open ocean lifesaving because KINI was not certified.

(Please See the Complaint at Pages 14-15, ¶¶ 43 a. through d. ).

Careful  review of the Complaint shows its  sufficiency of and compliance

with FRCP Rule 8(a) with respect to, among other federally protected rights,

CARL's freedom of speech under the First Amendment of the Constitution of the

United States.

Any other conclusion by this Court would mean that it is subjecting and

holding plaintiffs to a heightened pleading standard that is violative of the Federal

Rules of Civil Procedure and contradictive of well established United States

Supreme Court precedent prohibiting court-fashioned heightened pleading

standards in contravention or FRCP Rule 8.  See Swierkiewicz v. Sorema N.A.

543 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1  (2002);  Crawford-El v. Britton

(1998) 523 U.S. 574, 118 S.Ct.1584, 140 L.Ed.2d 759;  Leatherman v. Tarrant

County Narcotics Intelligence and Coordination Unit 507 U.S. 163 (1993); Conley

v. Gibson 355 U.S. 41 (1957) .

Under the United States Supreme Court's longstanding interpretation of

FRCP Rule 8, "a court may dismiss a complaint only if it is clear that no relief

could be granted under any set of facts that could be proved consistent with the

allegations," Swierkiewicz v. Sorema N.A. 543 U.S. 506 (2002).   As seen

hereinabove, the Complaint in this case clearly shows that relief can be granted under many sets of facts that could upon trial be proved consistent with the existing allegations.

In Galbraith v. County of Santa Clara 307 F.3d 1119 (9th Cir. 2002), the Ninth Circuit Court of Appeals specifically held that the old practice of courts imposing heightened pleading standards upon plaintiffs in 42 U.S.C. §1983 cases under Branch v. Tunnell, (1991) 937 F.2d 1382, is no longer good law. See also Porter v. Jones, 307 F.3d 1119 (9th Cir. 2003). In the post-Galbraith world, "only a short and plain statement of a claim against an individual defendant is required." The Complaint in this case gives the defendants far more than a short and plain statement of a claim against them with respect to all the federal rights alleged, including CARL's First Amendment rights.

**B.    PLAINTIFFS HAVE PRESENTED SPECIFIC FACTS AND EVIDENCE THAT, WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THEM, CLEARLY SUPPORTS THEIR 42 SECTION U.S.C. 1983 FIRST AMENDMENT RETALIATION CLAIM.**

In Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003), the Court of Appeals for the Ninth Circuit held that "[i]n a First Amendment retaliation case, an adverse employment action is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech." The court also held that "when

adverse employment actions are taken between three and eight months after the

plaintiffs' protected speech, a reasonable jury could infer that retaliation is a

substantial or motivating factor."   In so holding, the Court expanded the First

Amendment protections afforded to the employee through a relaxation of previous

case standards in First Amendment retaliation claims.

In reversing the district court magistrates's granting of the government

employer's motion for summary judgment, the Court stated:

> "The precise nature of the retaliation is not critical to the First
> Amendment retaliation cases.  The goal is to prevent, or redress,
> actions by a government employer that "chill the exercise of protected
> speech."  (citing with approval Rutan v. Republican Party of Illinois,
> 497 U.S. 62, 73 (1990).... Various kinds of employment actions may
> have an impermissible chilling effect.  Depending on the circumstances,
> even minor acts of retaliation can infringe on an employee's First
> Amendment rights.  920 F.2d at 974-975"

The Court further held that to constitute an adverse employment action, a

government act of retaliation need not be severe and it need not be of a certain kind

and that it does it matter whether and act of retaliation is in th for of the remove of a

benefit or the imposition of a burden.  920 F.2d at 975.

In his concurrence to the decision, Judge Ferguson aptly described the main

outcome of Coszalter — that of protecting the state employee from acts of

retaliation. Specifically, Judge Ferguson quoted Rutan v. Republican Party of

Illinois, 497 U.S. 62, 76-77 n. 8, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990),

where the U.S. Supreme Court stated, "[T]he First Amendment . . . protects state

employees not only from patronage dismissals but also from 'even an act of

retaliation as trivial as failing to hold a birthday party for a public employee . . .

when intended to punish her for exercising her free speech rights."

In the present case, there is a long list of protected speech of CARL and

retaliatory acts by the COUNTY. The following is a chronological list as set forth

in "the evidence, declarations or exhibits" filed in connection with the opposition

to the Motions for Summary Judgment:

1.  In or about February 2001, CARL contacted KADEN and told
    him does not know what he is doing with respect to public
    water safety and that he is endangering the lives of the public.
    Please see the Declaration of Carl Ragasa dated January 5,
    2006 (the "Ragasa Declaration") at Page 4, ¶ 12).

2.  In or about February 2001, CARL contacted KADEN and told
    him that he cannot "call shots" 40 miles from the scene of
    danger and that CARL and WSO Mark McKamey, unlike
    KADEN, had years of experience dealing with the treacherous
    surf conditions and that it would be better if CARL and WSO
    McKamey handle situations involving heavy surf.   Please see
    the Ragasa Declaration at Page 4, ¶ 12.

3.  In February or about 2001, CARL told his friends and his
    relatives that he had no respect for KADEN and that KADEN
    was bad for the Water Safety Program and public safety in
    general. Please see the Ragasa Declaration at Page 4, ¶ 13.

4.      In early 2002, KADEN formed the belief that CARL was
        spreading rumors that KADEN was a heroin dealer.  Please see
        the Declaration of Terry Chung dated November 24, 2005 (the
        "Chung Declaration") at Page 3, ¶ 14).

5.      In early January 2002, KADEN stated on at least four (4)
        separate occasions at KFD headquarters, "F——— CARL!  I'm
        going to get him fired!" Please see the Declaration of Norman
        Hunter dated October 24, 2005 (the "Hunter Declaration") at
        Page 2, ¶ 8).

6.      In January 2002, KADEN and SPROAT made plans to write a
        letter to CARL designed to make CARL angry and commit
        assault upon KADEN, have KADEN deliver the letter to CARL
        at Tower 1 while KADEN was wearing an electronic recording
        device in order to record the hoped for assault on KADEN by
        CARL.    that SPROAT and KADEN hoped CARL would
        commit when the letter was delivered.  Please see the Hunter
        Declaration" at Page 2-3, ¶ 9 A.-D.).

7.      In mid-2001 KADEN and SPROAT formed a plan to
        hire Bruce Stine, open a new tower on the North Shore, find a
        way to get rid of CARL, and then have Bruce Stine take over
        for CARL at Tower 1.  Please See the Declaration of Bruce
        Stine dated October 23, 2005 at Page 4, ¶ 21.

8.      In the summer 2001, CARL told the other Water Safety
        Officers that KADEN and KINI were both bad for the Water
        Safety Program and public safety in general.  Please see the
        Ragasa Declaration at Page 12, ¶ 29.

9.      In the summer 2001, CARL contacted WSO Supervisor
        Hookano and WSO Supervisor Emura and told them that he
        fully agreed with their assessment that KINI was not qualified
        to take over command and control of all of the Water Safety
        Officers on Kauai.  Please see the Ragasa Declaration at Page
        14, ¶ 38.

10.  In the summer of 2001, CARL contacted WSO Supervisor
     Hookano and WSO Supervisor Emura and told them he would
     help them to stop KINI from being involved in the Water
     Safety Program in any way that he could.   Please see the
     Ragasa Declaration at Page 14, ¶ 38.

11.  During 2001, CARL contacted other Water Safety Officers and
     WSO Supervisors Hookano and Emura on several different
     occasions and told them that SAGE was endangering the lives
     of the beach going public, the other Water Safety Officers that
     he was assigned to work with and him. Please see the Ragasa
     Declaration at Pages 23-24, ¶¶ 70-72.

12.  During KFD Water Safety Program Meetings and at other times
     during the summer of 2001, KADEN stated many times that he
     was having problems with CARL and that he really wanted to
     fire CARL. Please see the Declaration of Myles Emura dated
     November 24, 2005 (the "Emura Declaration") at Pages 3-4,
     ¶16 and the Declaration of Nathan Hookano dated November
     24, 2005 (the "Hookano Declaration") at Page 9, ¶46.

13.  During the summer of 2001, KADEN filed at least
     one fraudulent reprimand against CARL.  Please see the Emura
     Declaration at Page 4, ¶17 and the Hookano Declaration at
     Page 9, ¶47.

14.  During the summer of 2001, KADEN attempted on
     several occasions to get CARL reprimanded for
     leaving his post at the Tower 1 Pavilion without authorization.
     Please see the Emura Declaration at Pages 4, ¶18 and the
     Hookano Declaration at Page 11, ¶48

15.  In the fall of 2001, CARL contacted WSO Supervisor Hookano
     and WSO Supervisor Emura and told them that KADEN and
     SPROAT would keep trying to get KINI as the head of the
     Water Safety Program no matter what because KINI was
     KADEN's and SPROAT's "boy."  Please see the Declaration of

15

Myles Emura dated November 24, 2005 (the "Emura Declaration") at Pages 5 at ¶25 and the Declaration of Nathan Hookano dated November 24, 2005 (the "Hookano Declaration") at Page 13, ¶56.

16.    During 2001, CARL contacted other Water Safety Officers WSO Supervisors Hookano and Emura on several different occasions and told them that he was frustrated because the COUNTY was taking no action to correct the fact that SAGE was endangering the lives of the beach going public, RAGASA and the other Water Safety Officers that SAGE was assigned to work with. Please see the Ragasa Declaration at Page 23, ¶¶ 72 and 73.

17.    On December 28, 2001, CARL signed a "written survey" for publication in which he stated that KFD should not have command and control over the training of the Water Safety Officers. (Please See the Complaint at Page 10, ¶ 30 and Exhibit "A" thereto at line 10).

18.    On December 28, 2001, CARL signed a "written survey" for publication in which he stated that KADEN should not be involved in any way with the Water Safety Bureau. (Please See the Complaint at Page 10, ¶ 32 and Exhibit "B" thereto at line 10.[6])

19.    In early 2002, CARL contacted SAGE several times and told him that SAGE presented a clear and present danger to the lives of the beach going public on Kauai, the other Water Safety Officers that he is assigned to work with and CARL. Please see the Ragasa Declaration at Page 24, ¶ 74.

_____

[6]Through clerical error, Exhibit "A" and Exhibit "B" to the Complaint are the same petition. CARL signed both petitions as an exercise of his free speech. Counsel for all parties had made representations on the record during the taking of CARL's deposition in late 2004 that the parties would stipulate to correct this error by allowing the Complaint to be amended prior to trial.

20.   In February 2002, CARL twice told KINI that KINI must display to CARL his USLA certification card to prove that he was legally certified by USLA in open water lifesaving procedures or CARL would not allow KINI to train him. Please see the Ragasa Declaration at Page 25-26, ¶¶ 75, 75(B), 75(D), 76, 76(B), 76(D).

21.   In February 2002, CARL contacted many of the other Water Safety Officers that worked for the COUNTY and told them that they should not allow KINI to train them in open water lifesaving procedures because KINI was nothing more than a fireman who did not know what he was doing and that KINI was not licensed or qualified to instruct them. Please see the Ragasa Declaration at Page 26-27, ¶ 78.

22.   On March 20, 2002, CARL contacted KINI and told KINI that he had many problems with SAGE as the direct result of SAGE's many unprofessional acts and behavior. Please see the Ragasa Declaration at Page 28, ¶87 and the McKamey Declaration at Page 3, ¶11.

23.   On March 20, 2002, CARL contacted KINI and told KINI that bringing SAGE back to Tower 1 was a bad idea. Please see the Ragasa Declaration at Page 29, ¶89 and the McKamey Declaration at Page 3, ¶11.

24.   On March 20, 2002, CARL contacted KINI and told KINI that he wanted to avoid a confrontation with SAGE. Please see the Ragasa Declaration at Page 29, ¶89 and the McKamey Declaration at Page 3, ¶13.

25.   On March 20, 2002, CARL contacted KINI and told KINI that SAGE seemed to be wanting to start trouble at Tower 1. Please see the Ragasa Declaration at Page 29, ¶89 and the McKamey Declaration at Page 3, ¶13.

26.    On March 21, 2002, CARL contacted KINI and told KINI that KINI should hold the next USLA open water training class at Tower #2, where the surf conditions would be more suitable for rescue board and Jet Ski training. Please see the Ragasa Declaration at Page 29, ¶90 and the Chung Declaration at Page 5, ¶19.

27.    On March 27, 2002, KADEN picked up SAGE in a COUNTY vehicle while SAGE was at work at Tower 9 to take him to the Kauai Police Department ("KPD") to make a false report about CARL in order to get CARL arrested. Please see the Hunter Declaration at ¶9.

28.    On March 27, 2002, KADEN told SAGE that if he did not go with him to KPD and make a false police report against CARL, then KADEN would fire SAGE from his job as a Water Safety Officer. Please See the Hunter Declaration at ¶9.

29.    On March 27, 2002 SAGE, while at KPD, made several false statements to KPD with KINI by his side and KADEN over his shoulder about what had happened at Tower 1 on March 20 and March 22, 2002. Please see the Hunter Declaration at ¶10, A through C.

30.    On March 27, 2002 SAGE made false statements about CARL to KPD because KADEN, KINI and SPROAT were intimidating him and pressuring him into doing so ¶10, A through D. Please see the Hunter Declaration at ¶10, A through C.

31.    In early June 2002, CARL was contacted by SAGE, during which time CARL asked SAGE to put into writing how SPROAT, KADEN and KINI were involved with SAGE in making a false police report against CARL back on March 27, 2002. Please see the Ragasa Declaration at Page 36, ¶112.

32.   In the fall of 2002, CARL was contacted by SAGE, during which time CARL asked SAGE to make a taped statement about how SPROAT, KADEN and KINI were involved with SAGE in making a false police report against CARL back on March 27, 2002. Please see the Ragasa Declaration at Page 36, ¶113.

33.   On August 29, 2003, CARL wrote a letter to the United States Lifesaving Association ("USLA"). In that letter, CARL stated, in pertinent part, that:

A.   "Ever since I have worked under the direct administration of KFD, the work conditions and mission readiness of all open waters safety officers on Kauai has greatly declined." Please see Exhibit "A" on Page 1, Section B, lines 1 and 2.

B.   "At the same time, public safety for Kauai beachgoers has been seriously compromised." Please see Exhibit "A" on Page 1, Section B, lines 2-3.

C.   "These dangerous and unacceptable conditions now exist, and have existed for almost three (3) years, primarily because KFD has wrongfully used USLA's good name and reputation to perpetrate a fraud upon Kauai's beachgoing visitors and residents." Please see Exhibit "A" on Page 1, Section B, lines 3-6

D.   "KFD's scheme and artifice has been executed by it placing and mandating that unqualified KFD personnel command and control all aspects of open water lifesaving standards, training and certification procedures for all of Kauai's water safety officers."

19

Please see Exhibit "A" on Page 1, Section B, lines 6-9.

E.    "KFD has provided false information to USLA with respect to its standards and training."  Please see Exhibit "A" on Page 2, Section D, first paragraph, line 1.

F.    "While KFD is not even certified by USLA, it acts as though and holds itself out to the world and the public at large that it is."  Please see Exhibit "A" on Page 2, Section D, first paragraph, lines 2-3.

G.    "As such, I request that you push KFD to comply with recognized national open water lifesaving standards, as I have been doing ever since KFD became my employer.  Please see Exhibit "A" on Page 2, Section D, first paragraph lines 3-5.

H.    "Specifically, KFD is now and has been since at least January 2001 using KFD Fireman Sid Kini as a USLA Lifeguard Agency Certification Program Instructor to train Water Safety Officers in open water lifesaving."  Please see Exhibit "A" on Page 2, Section D, second paragraph, lines 1-3.

I.    "This is a blatant fraud perpetrated upon all of the Water Safety Officers on Kauai, and the residents of and visitors to Kauai by former KFD Fire Chief David Sproat, former KFD Battalion Chief Robert Kaden, former KFD Battalion Chief David Walker, KFD Fire Chief Charles Hiramoto and KFD Battalion Chief Teddy Williams, Fireman Kini himself, and possibly others elected and non-elected officials within the County of Kauai government.  Please see Exhibit "A" on Page 2, Section D, second paragraph, lines 3-8.

20

J.    "Of possibly even greater concern to you, oceans safety administrator Ralph Goto, who is the Pacific Island Region certification officer for USLA, is fully aware of KFD's fraud, but has neither said nor done anything to correct it." Please see Exhibit "A" on Page 2, Section D, third paragraph, lines 1-3.

K.    "Worst of all, at least six (6) WSO's on full-time current active duty on Kauai received their initial USLA open water certification training from Fireman Kini." Please see Exhibit "A" on Page 2, Section D, fourth paragraph, lines 1-2.

L.    "His and KFD's ongoing fraud has clearly resulted in the compromise of beachgoers' safety here on Kauai." Please see Exhibit "A" on Page 2, Section D, fourth paragraph, lines 2-3.

M.    "Simply put, several people have already drowned as a direct result of this ongoing situation. Please see Exhibit "A" on Page 2, Section D, fourth paragraph, lines 3-4.

N.    "The main question is how many more will needlessly die before someone does something." Please see Exhibit "A" on Page 2, Section D, fourth paragraph, lines 4-5.

O.    "In the months that followed Fireman Kini's appointment by BC Kaden to be the lead instructor for USLA-sanctioned open water courses, Fireman Kini held and instructed several so-called USLA training courses for all of the WSOs." Please see Exhibit "A" on Page 4, Section D, sixteenth paragraph, lines 1-3.

21

P.  "These courses were, of course, all both substandard and fraudulent." Please see Exhibit "A" on Page 4, Section D, sixteenth paragraph, lines 3-4.

Q.  "Fireman Kini was not then, was not before then, and is not now, part of the lifeguard program that USLA certified back in 1998." Please see Exhibit "A" on Page 4, Section D, sixteenth paragraph, lines 4-5.

R.  "Unlike WSO Supervisors Hookano and Ortiz, KFD Fireman Kini was a fireman in KFD, not a lifeguard in Park and Recreation after the USLA Lifeguard Agency Certification Program first came into existence in 1992." Please see Exhibit "A" on Page 4, Section D, sixteenth paragraph, lines 6-8.

S.  "When Fireman Kini conducts his fraudulent USLA sanctioned open water courses, it is his custom and habit to issue verification cards to his 'trainees' that bear the words 'United States Lifeguard Association Kauai County, Kauai Fire Department, Water Safety Agency Certification Program' on the front." Please see Exhibit "A" on Page 4, Section D, seventeenth paragraph, lines 1-4.

T.  Again, KFD is not a USLA certified agency, and Fireman Kini was never a part of Parks and Recreation at any time during USLA's existence." Please see Exhibit "A" on Page 4, Section D, seventeenth paragraph, lines 4-5.

U.  "In essence, Fireman Kini, who is not certified in any way, shape or form by USLA, has trained for

going on three years now WSOs in open water training that does not meet USLA standards, and then fraudulently issuing certification cards to training WSOs." Please see Exhibit "A" on Page 4, Section D, seventeenth paragraph, lines 5-8.

V.    "I am ready, willing and able to provide documents to prove all that I have stated in this complaint to you upon request." Please see Exhibit "A" on Page 4, Section D, eighteenth paragraph, lines 1-2.

34.    In late March 2005, KFD Fire Chief Westerman falsely accused CARL of theft by deception and defrauding CARL's COUNTY time records and threatened CARL with formal disciplinary action and possible criminal prosecution. Please see the Ragasa Declaration at Pages 41-42, ¶131.[7]

35.    In late March 2005, CARL contacted the Hawaii Government Employees Association and told them that KFD Chief Robert Westerman had falsely accused CARL of theft by deception and defrauding his COUNTY time records. Please see the Ragasa Declaration at Page 42, ¶132.[8]

36.    In April 2005, KFD Chief Westerman, falsely accused CARL of being a substance abuser and a chronic alcoholic. Please see the Ragasa Declaration at Pages 42-43, ¶134.[9]

---

[7]This event occurred about one and one-half years after the Complaint was filed. Again, if the court maintains jurisdiction of this case upon disposition of the pending motions for summary judgment, the RAGASAS will seek to amend the Complaint pursuant to FRCP Rule 15(a) within a reasonable time thereafter and include this event and those that occurred thereafter.

[8]Id.

[9]Id

23

37.    In May 2005, the COUNTY and KFD ordered CARL to take a forced leave with pay under the pretense of having to take care of a substance abuse problem that he simply never had. Please see the Ragasa Declaration at Pages 43, ¶135.[10]

## 1.    Plaintiffs Have Shown that CARL Engaged in Protected Speech.

In defining what is "protected speech", the Cozalter Court relied primarily on the holdings in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731 20 L.Ed.2d. 811 (1968) and Allen v. Scribner, 812 F.2d 426, 428 (9th Cir. 1987).

In Pickering, the Supreme Court held that an employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern. In Allen, the Ninth Circuit held that "the determination of whether an employee's speech deals with such an issue of public concern is to be made with reference to 'the content, form, and context' of the speech. Thus, "[s]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'"

Based on the Allen standard, all of the speech made by CARL in the chronological list is protected speech regarding matters of public concern.

---

[10]Id.

24

Everything that he said and wrote, when viewed in the light most favorable to him, was criticism directed at those in the COUNTY who he deemed to be jeopardizing public water safety, endangering the lives of the public, endangering the lives of Water Safety Officers, and violations of certification of open water training, certification and or procedures. None of the speech cited herein deals with 'individual personnel disputes and grievances' between CARL and any of the defendants. How could it? SPROAT, KADEN, KINI and SAGE conspired to get rid of CARL precisely because he was at all times criticizing the very way in which they were commanding and controlling all of the important aspects of the Water Safety Program itself.

### 2.    Plaintiffs Have Shown that the COUNTY Took 'Adverse Action' Against CARL.

The Cozalter Court held that the proper standard for what constitutes 'adverse action' was the "reasonably likely to deter" standard. The Court cited two recent cases as instructive on the matter: Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) and Moore v. California Institute of Technology Jet Propulsion Laboratory, 275 F.3d 838 (9th Cir. 2002). In those cases, Title VII and the False Claims and Major Fraud Acts protected each employee's speech, respectively. Although Coszalter encompassed protected speech under the First Amendment, the

court stated that the "reasonably likely to deter" standard as set forth in Ray and Moore was indeed applicable to that case.

The Cozalter Court specifically stated that its "reasonably likely to deter" standard was "a more specific articulation of the standard set forth in previous First Amendment retaliation cases."   Therefore, the court held that the magistrate judge in Cozalter **reversibly erred** when he found that defendants' acts of performing unwarranted disciplinary investigations against Cozalter and reprimanding Cozalter based on false accusations were not adverse employment actions.

The Cozalter Court further held that when analyzing whether the public employer's actions against an employee were adverse employment actions, the the trial court must analyze all of the defendants' acts together to determine whether or not those acts, when taken together, "amounted to a severe and sustained campaign of employer retaliation that was 'reasonably likely to deter' plaintiffs from engaging in speech protected under the First Amendment."

Based on the chronological list set forth in detail hereinabove, it is abundantly clear that the actions of the COUNTY, KFD, SPROAT, KADEN, KINI and SAGE amounted to a severe and sustained campaign of employer retaliation against CARL

that was 'reasonably likely to deter' him from engaging in speech protected under the First Amendment."

### 3.    Plaintiffs Have Shown that CARL's Speech Was a 'Substantial or Motivating' Factor for the Adverse Employment Action.

The Cozalter Court analyzed the third element in plaintiffs' First Amendment retaliation claim, specifically addressing whether plaintiffs' speech was a "substantial or motivating factor" for defendants' adverse employment actions.

Relying on <u>Keyser v. Sacramento City Unified School District</u>, 265 F.3d 741 (9th Cir. 2001) the Court listed three ways in which a plaintiff could show that retaliation was a substantial or motivating factor behind a defendant's adverse employment action:

First, a plaintiff can introduce evidence regarding the "proximity in time between the protected action and the allegedly retaliatory employment decision, from which a jury logically could infer that the plaintiff suffered adverse action was in retaliation for his speech." Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pretextual."

Based on the chronological list set forth hereinabove, Plaintiffs could readily prove to a jury that retaliation was a substantial or motivating factor behind the defendants' adverse employment action against CARL in any one of or all three of those ways.

## C.   **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that this Court finds that a 42 Section U.S.C. 1983 claim based on First Amendment retaliation has been stated in this case and that, in light of <u>Coszalter</u>, specific facts and evidence have been introduced to support this claim.

DATED:  Lihue, Kauai, Hawaii, February 8, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
Attorneys for Plaintiffs
CARL RAGASA and KANANI RAGASA

**PLAINTIFFS CARL RAGASA and KANANI RAGASA'S SUPPLEMENTAL  MEMORANDUM IN OPPOSITION TO DEFENDANTS COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I - IX OF PLAINTIFFS CARL RAGASA and KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003;**

DONNA E. RICHARDS, #7625
MARK R. ZENGER, #3511
RICHARDS & ZENGER
Attorneys at Law, A Law Corporation
3016 Umi Street, Suites 204 and 212
Lihue, Hawaii 96766
Telephone: (808) 632-0723
Facsimile: (808) 632-0724

Attorneys for Plaintiffs
CARL RAGASA and KANANI RAGASA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CARL RAGASA and KANANI RAGASA, | ) ) ) | CIVIL NO. 03-00540 BMK |
| Plaintiffs, | ) ) ) ) | **CERTIFICATE OF SERVICE** **(Re:  PLAINTIFFS CARL RAGASA AND KANANI RAGASA'S** |
| vs. | ) ) | **SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS** |
| COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI and ETHAN SAGE, | ) ) ) ) ) ) ) | **COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I - IX OF** |
| Defendants. | ) ) ) | **PLAINTIFFS CARL RAGASA AND KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003;** |
| | ) ) | **CERTIFICATE OF SERVICE)** |
| | ) ) ) ) ) ) ) | **HEARING** **DATE: JANUARY 24, 2006** **TIME:  10:00 A.M.** **JUDGE: BARRY M. KURREN** **TRIAL DATE: November 13, 2006** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing "**PLAINTIFFS CARL RAGASA AND KANANI RAGASA'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN AND SIDNEY KINI'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I - IX OF PLAINTIFFS CARL RAGASA AND KANANI RAGASA'S COMPLAINT FILED ON OCTOBER 3, 2003; CERTIFICATE OF SERVICE**" was served on the following persons via regular mail and facsimile on the date shown below.

> CORLISS CHANG, ESQ.
> GOODSILL ANDERSON QUINN & STIFEL
> 1800 Ali'i Place, 1099 Alakea Street
> Honolulu, Hawaii 96813
> Facsimile No. (808) 547-5880
>
> Attorney for Defendants
> COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT,
> DAVID SPROAT, ROBERT KADEN and SIDNEY KINI
>
> DARWIN D.L. CHING, ESQ.
> 1001 Bishop Street
> American Savings Bank Tower, Suite 1008
> Honolulu, Hawaii 96813
> Facsimile No. (808) 536-2119

2

Attorney for Defendant
ETHAN SAGE

DATED:    Lihue, Kauai, Hawaii, February 08, 2006.

MARK R. ZENGER
DONNA E. RICHARDS
Attorneys for Plaintiffs
CARL RAGASA and KANANI RAGASA

**CERTIFICATE OF SERVICE; Carl Ragasa and Kanani Ragasa v. County of Kauai, et. al,** United States District Court, District of Hawaii, CIVIL NO. CV03-00540 BMK.

3