IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CARL RAGASA AND KANANI RAGASA, | ) ) ) | CIVIL NO. 03-00540 BMK |
| Plaintiffs, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTIONS FOR |
| vs. | ) ) | SUMMARY JUDGMENT |
| COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI, AND ETHAN SAGE, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On October 3, 2003, Plaintiffs Carl Ragasa and Kanani Ragasa

("Plaintiffs") filed a Complaint, asserting the following claims against Defendants

County of Kauai, Kauai Fire Department, David Sproat, Robert Kaden,  Sidney

Kini, and Ethan Sage ("Defendants"): (1) violations of 42 U.S.C. §1983 (Counts I

and II); (2) conspiracy (Count III); (3) respondeat superior (Count IV); (4)

intentional infliction of emotional distress (Count V); (5) negligent infliction of

emotional distress (Count VI); (6) false imprisonment (Count VII); (7) defamation (Count VIII); and (8) malicious prosecution (Count IX).

Defendants County of Kauai, Kauai Fire Department, David Sproat, Robert Kaden, and Sidney Kini ("County Defendants"), filed three (3) motions for summary judgment ("Motions") seeking dismissal of Counts I-IX of Plaintiffs' Complaint. Plaintiffs filed an opposition to the Motions ("Opposition"); Defendants filed three (3) motions in reply ("Reply"). Defendant Sage filed a joinder to County Defendants' Motions.

The Motions came on for hearing on January 24, 2006. Attorney Mark Zenger and Attorney Donna E. Richards appeared on behalf of Plaintiffs; Attorney Corlis Chang and Attorney Edmund K. Saffery appeared on behalf of County Defendants; Attorney Darwin L.D. Ching appeared on behalf of Defendant Ethan Sage.

On January 25, 2006, the Court, after finding that the issue of First Amendment retaliation had not been clearly articulated in Plaintiffs' Complaint nor fully briefed by the parties, issued an Order requesting further briefing on Plaintiff's First Amendment claim. On February 8, 2006, Plaintiffs and County Defendants submitted supplemental memoranda. Defendant Sage filed a joinder to County Defendants' supplemental memorandum.

After careful consideration of the Motions, supporting and opposing memoranda, and arguments of counsel, the Court GRANTS in part and DENIES in part County Defendants' Motions.

<u>BACKGROUND</u>

Plaintiff Carl Ragasa ("Ragasa"), a water safety officer ("WSO") employed by the County of Kauai, and Kanani Ragasa, have sued Defendants for actions Defendants allegedly took during the course of Ragasa's employment. While Plaintiffs and County Defendants recite different versions of the facts, the following facts are not in dispute. Around January of 2001, Defendant David Sproat ("Sproat"), the Chief of the Kauai Fire Department ("KFD"), placed Defendant Robert Kaden ("Kaden"), a battalion chief employed by the KFD, in control of thirty WSOs in Kauai. Previously, the KFD had not been in charge of the WSOs, and this change was met with some resistence. In the summer of 2001, Kaden assigned Defendant Sidney Kini ("Kini") to take over the command, control, and training of the WSOs.

On March 20, 2002, Kini brought Defendant Ethan Sage ("Sage"), a WSO, and others to Tower 1, where Ragasa worked, to conduct a training class. On March 22, 2002, Kini, Sage, and others arrived at Tower 1 for training and words were exchanged between Ragasa and Kini and Sage. On March 27, 2002,

Kini and Sage made statements to the police about what had happened at Tower 1 on March 20 and March 22, 2002. On March 31, 2002, Ragasa was arrested at Tower 1 and taken to the police station where he was detained for two hours. On October 7, 2002, Prosecutor Soong issued a criminal complaint against Ragasa charging two counts of criminal harassment in violation of Hawaii Revised Statutes ("H.R.S.") §711-1106. In November 2002, the charges were dismissed.

Plaintiffs and County Defendants espouse different views regarding the scope of Plaintiffs' lawsuit and the details of the events underlying Plaintiffs' claims. Plaintiffs argue that their lawsuit stems from conflicts arising as early as January 2001, while Defendants focus on the events leading up to incidents that occurred in March 2002.

Plaintiffs allege that shortly after Sproat placed Kaden in control of the WSOs in Kauai in January 2001, Kaden started issuing negligent orders to North Shore WSOs. Thereafter, Ragasa started telling people that Kaden was incompetent. Plaintiffs claim that Kaden retaliated against Ragasa by devising a plan to get Ragasa fired by inducing him to assault Kaden.

The same summer, Ragasa discovered that Kini was going to take over control of the Water Safety Program. WSO officers Kaleo Hookano ("Hookano") and Myles Emura ("Emura") joined Ragasa in his attempt to prevent

4

Kini from taking over.  Ragasa claimed that Kini was not certified or qualified for

that position by the United States Lifesaving Association ("USLA").  Plaintiffs

claim that Kaden told Sproat and WSO officers Hookano and Emura that he was

having problems with Ragasa and wanted to fire him.  During the summer of 2001,

Ragasa alleges that Kaden attempted to find a reason to reprimand Ragasa on many

occasions.

On December 28, 2001, Ragasa, along with other WSOs, signed two

surveys indicating that they did not feel firemen should be training lifeguards on

ocean safety and that Kaden should not be involved in any way with the water

safety program.

In 2001 and early 2002, Plaintiffs claim that Hookano and Emura told

the Mayor of Kauai, the Kauai County Council, and the rest of the KFD

supervisory structure that Sproat, Kaden, and Kini were involved in a variety of

criminal activities.  On or about January 2, 2002, Sproat and Kaden terminated

Hookano and suspended Emura without pay.  Ragasa believed that he would be

targeted next.  In February 2002, Sproat and Kaden ordered Kini to go to Tower 1

to train all the WSOs on the North Shore, including those under Ragasa.  On two

occasions, Ragasa asked Kini for his certification card, and Kini refused to display

his card.  Ragasa told other WSOs that Kini should not be conducting the training

because he was not certified.

Plaintiffs allege that Sproat, Kaden and Kini devised another scheme

to terminate Ragasa by enlisting Sage, a WSO, to instigate a fight with Ragasa.  On

March 20, 2002, Kini brought Sage and others to a training class at Tower 1, where

Ragasa was stationed.  Plaintiffs allege that while there, Sage said, "look at the

senior guards.  They don't know how to do their jobs!"  Ragasa replied, "get the f-

out of here.  Don't tell us how to do our jobs."  Ragasa and WSO Mark McKamey

asked Kini to train Sage elsewhere the next time.  Plaintiffs allege that when Kaden

heard about this, he ordered Kini to bring Sage back to Tower 1 for training.

On March 22, 2002, when Kini, Sage and others arrived back at

Tower 1 for training, Plaintiffs claim that Ragasa said to Sage, "good morning,

diaper boy."  Sage allegedly replied, "Carl, why the f- do you have to be so

negative all of the time." Plaintiffs assert that Ragasa walked away from Sage at

this point.  Then, Kini approached Ragasa who said to him, "We told you Sid

(Kini), don't bring (Sage) around here.  Why did you bring him over here?"

Plaintiffs claim that Kini did not respond and that Ragasa left the area.

On March 27, 2002, Kaden picked up Sage using a County truck

while both were on duty and ordered him to go with him to the Kauai Police

6

Department ("KPD").  At the KPD, Plaintiffs claim that Kaden ordered Sage to

make false statements to the KPD about what had occurred at Tower 1 on March

20 and March 22, 2002.  Plaintiffs also claim that Sage and Kini lied to the KPD

and told them that Ragasa had threatened Sage with bodily injury several times on

March 22, 2002.  On March 31, 2002, Ragasa was publicly arrested at Tower 1 on

criminal harassment charges.  Plaintiffs claim that Sage later recanted his statement

and said that Kaden coerced him into making false statements.  The charges against

Ragasa were ultimately dismissed.

        Finally, Plaintiffs claim that the retaliation against Ragasa continued

beyond March 2002.  On August 29, 2003, Ragasa wrote a letter to the USLA

criticizing the way in which the KFD was running the water safety program.

Plaintiffs assert that in March and April 2005, the County and KFD, by and

through KFD Chief Robert Westerman, falsely accused Ragasa of deception by

defrauding his time records and of substance abuse and alcoholism, respectively.

Plaintiffs assert that both of these false accusations were determined to be

unfounded.

        County Defendants recite a different version of the events occurring

on March 20 and March 22, 2002.  According to County Defendants, on March 20,

2002, when Ragasa, Sage, and Kini were at Tower 1, Sage pointed out to Ragasa

7

and another WSO that a person might need to be rescued.  Ragasa interpreted

Sages's remarks to be "mocking" them and told Sage in a raised voice to "get the f-

out."  Kini testified that Ragasa told him if he brought Sage back he would "break

his arms."  On March 21, 2002, Ragasa called Kini to tell him not to bring Sage

and the training class down to Tower 1.

On March 22, 2002, when Kini brought the training class down to

Tower 1 despite Ragasa's request, Kini observed Ragasa move towards Sage and

yell, "get the f- out of here."  Defendants allege that Kini moved in between

Ragasa and Sage to attempt to diffuse the situation.  County Defendants also claim

that Ragasa raised his voice at Kini and yelled, "let's go," and to "call the cops."

Ragasa then left the scene.

KPD Lt. Paul Kanoho advised Kaden to report the incident to the

police.  Kaden related this information to Kini, and Kini and Sage gave their

statements to the KPD.  Their statements indicated that Ragasa swore at and

challenged Sage.  Ragasa was arrested on March 31, 2002.  Around June 4, 2002,

Sage was reported to have stated that he did not want to press charges against

Ragasa.  County Defendants claim that Sage was pressured by Ragasa and others

to recant his statement to the police.  Nevertheless, on October 7, 2002, the

prosecutor issued a criminal complaint against Ragasa charging him with two

counts of criminal harassment.

County Defendants submit that the reason the charges were dismissed

can be found in a series of emails where Ragasa's father-in-law, Detective Rivera,

questions Prosecutor Soong as to why they were proceeding against Ragasa.

Prosecutor Soong told Detective Rivera, "I talked with Roland and explained the

history of the lifeguards and the Fire Department.  He will dismiss the Ragasa case

with prejudice when it comes up on the calendar."  Ragasa's case was dismissed

following this exchange.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u>

Fed. R. Civ. P. 56(c).  The moving party has the initial burden of "identifying for

the court those portions of the materials on file in the case that it believes

demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv.,</u>

<u>Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing

<u>Chelates Corp. v. Citrate</u>, 477 U.S. 317, 323 (1986)).  In a motion for summary

judgment, the court must view the facts in the light most favorable to the

nonmoving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  <u>T.W. Elec.</u>, 809 F.2d at 630; Fed. R. Civ. P. 56(e).  The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. <u>Intel Corp. v. Hartford Accident & Indemnity Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  <u>T.W. Elec.</u>, 809 F.2d at 630; <u>Blue Ocean Preservation Soc. v. Watkins</u>, 754 F. Supp. 1450, 1455 (D. Haw. 1991); Fed. R. Civ. P. 56(e).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  <u>Lujan v. Natal Wildlife Fed'n</u>, 497 U.S. 871, 884 (1990); Fed. R. Civ. P 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. <u>Chelates</u>, 477 U.S. at 322; <u>Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 964 (9th Cir. 1994); <u>Blue Ocean</u>, 754 F. Supp. at 1455.

10

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec., 809 F.2d at 631 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)).  Inferences must be drawn in favor of the nonmoving party. T.W. Elec., 809 F.2d at 631.  However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law.  Id. at 631-32.  If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial.  Bator v. State of Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)).

## DISCUSSION

I.    Claims Arising Under 42 U.S.C. §1983

In Count I of Plaintiffs' Complaint, Plaintiffs allege that Defendants, acting under color of law, deprived Ragasa of his constitutional rights, "including

11

but not limited to the right to be secure in his person against unreasonable seizure of his person, cruel and unusual punishment and freedom of speech in violation of the First, Fourth, and Fourteenth Amendments...in violation of 42 U.S.C. §1983." In Count II, Plaintiffs allege that Defendants County and KFD knew or should have known of Defendant Sproat, Kaden, Kini and Sage's abuses of their respective positions.  In addition, Plaintiffs allege that Defendants County and KFD failed to use their authority to take appropriate action to investigate and curtail Defendants Sproat, Kaden, Kini, and Sage's wrongful activities and allowed them to openly retaliate against Ragasa.  Plaintiffs allege that "Defendants County and KFD, directly or indirectly, under color of law, approved or ratified the above described unlawful, deliberate, malicious, reckless and wanton conduct of Defendants Sproat, Kaden, Kini and Sage."

      42 U.S.C. §1983 ("Section 1983") provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983 (2006).  By its terms, the statute does not create substantive

rights, it merely provides a method for vindicating federal rights established

elsewhere.  <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3 (1979).  Thus, in order to

maintain a Section 1983 claim, a plaintiff must show (1) that the defendant acted

under color of law and (2) that the defendant's conduct deprived the plaintiff of a

federally protected right.  <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 746 (9th

Cir. 1986); <u>See</u> <u>also</u> 42 U.S.C. §1983.

A.    <u>Color of Law</u>

A person acts under color of law when he or she exercises power possessed

by virtue of law and "made possible only because the wrongdoer is clothed with

the authority of state law."  <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).  In

cases arising under Section 1983, the test for determining whether a person acted

"under color of law" is the same as that for determining whether there is "state

action" for purposes of the Fourteenth Amendment.  <u>See</u> <u>Lugar v. Edmondson Oil</u>

<u>Co.</u>, 457 U.S. 922, 928 (1982).  In addition, since Section 1983 itself does not

create substantive rights, the action claimed to have been taken under color of law

must be a violation of a federal right in order for a Court to find liability under

Section 1983.

13

With respect to public employees, the Supreme Court has stated that "state employment is generally sufficient to render the defendant a state actor...[g]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 49-50 (1988)(citations omitted). However, "[i]t is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." Mark v. Borough of Hatboro, 51 F. 3d 1137, 1150 (3d. Cir. 1995). In order for the tortfeasor to be acting under color of law, his act must involve the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Classic, 313 U.S. at 326. For example, acts taken by police officers on duty and in uniform are not taken under color of state law unless they are in some way related to the performance of police duties. Mark, 51 F.3d at 1151 (citations omitted). In addition, the Third Circuit has held that a firefighter who committed arson was not acting under color of law. See id. at 1151-52.

In this case, Plaintiffs' constitutional claims fall into one of two categories:  1) claims relating to the alleged false arrest; and 2) claims relating to

14

alleged First Amendment violations.  The Court will analyze whether Defendants

were acting under color of law for purposes of each of these categories.

With respect to claims relating to the alleged false arrest, the relevant

inquiry is whether Defendants' alleged actions of harassing Plaintiff, conspiring to

have him fired, and making false reports to the police are sufficiently related to the

performance of their firefighting and lifeguarding duties such that the Court should

find that Defendants were acting under color of law.  Plaintiffs argue that

Defendants "used their official capacities, using County vehicles, on County time,

fighting over County policies in the County workplace, all the while hiding behind

their County badges and County uniforms told lies about what happened in the

workplace to deprive Carl of federally protected liberty interests."  Additionally,

Plaintiffs argue that the fact that Kaden, Kini, and Sproat conspired, planned, and

caused Ragasa to be falsely arrested in public while he was at work demonstrates

that they were acting under color of law.  County Defendants, on the other hand,

argue that the fact that Sproat, Kaden, and Kini were employees of KFD is

incidental, not causal to any alleged wrongdoing.  Moreover, County Defendants

assert that there is no causal nexus between Ragasa's arrest and any alleged

exercise of official power or right possessed by Sproat, Kaden, or Kini by virtue of

their status as firefighters.  Finally, County Defendants rely on <u>Vanderlinde v.</u>

15

Brochman, 792 F. Supp. 52, 54-55 (N.D. Ill. 1992), where the court stated, "[n]othing about the office of fireman, the office with which [the defendants] were cloaked, either implies or facilitates their usurpation of law enforcement...activities" and concluded that the firefighters were involved in a private brawl and thus were not acting under color of law.

The Court finds that the alleged actions of County Defendants Sproat, Kaden, and Kini were not made possible only because they were clothed with the authority of state law. Similar to a firefighter who commits arson or assault, a firefighter who allegedly engages in harassment, a conspiracy to have someone fired and falsely arrested, and who makes false statements to police, is not acting within the scope of his official duties as a firefighter. Any private citizen, who is not clothed with the authority of state law, could have performed these acts. While these alleged actions may have been taken by public employees during the hours of their employment, those facts are merely incidental and are not the cause of Ragasa's alleged injuries. Consequently, the Court finds that Defendants were not acting under color of law with regard to Plaintiffs' claims relating to the alleged false arrest.

With respect to Plaintiffs' First Amendment claims, the analysis differs, however, since the focus is on the employer/employee relationship between

16

the parties. Plaintiffs' First Amendment retaliation claim encompasses a broader scope of alleged conduct than Plaintiffs' claim relating to Ragasa's alleged false arrest. Plaintiffs allege numerous and ongoing retaliatory acts taken by Defendants against Ragasa beginning as early as January 2001. In addition, Plaintiffs' First Amendment retaliation claim relates to alleged conduct that occurred within the scope of Ragasa's employment, rather than an alleged tortious act occurring outside the scope of employment. In viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have produced evidence of ongoing conflicts between Ragasa and County Defendants that stemmed from their employer/employee relationship.[1] The crux of Plaintiffs' First Amendment claim is that County Defendants, as Ragasa's employers, retaliated against him for engaging in protected speech. Unlike Plaintiffs' claims relating to the alleged false arrest, his First Amendment claim against County Defendants pertains to conduct directly taken by County Defendants in retaliation for Ragasa engaging in protected speech. Consequently, the Court finds that Plaintiffs have presented sufficient evidence that County Defendants acted under color of law for purposes of summary judgment. As to Defendant Sage, the Court finds that Defendant Sage

---

[1] From the facts presented to the Court, it appears that the KFD taking over the WSOs created an employer/employee type of relationship. Thus, the Court will analyze Plaintiffs' claims taking this relationship into account.

did not act under color of law since he was a coworker of Ragasa's, and not an employer.

B.     Deprivation of a Federally Protected Right

In order to sustain an action under Section 1983, Plaintiffs must show that the acts allegedly taken by Defendants amounted to a deprivation of a federally protected right.  Plaintiffs allege violations of the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

1.  First Amendment Claim

In Plaintiffs' supplemental memorandum, they argue that Plaintiffs have stated a claim for First Amendment retaliation in ¶58 of the Complaint which is supported by other factual allegations throughout the Complaint.[2]  In Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003), the Ninth Circuit held that "[i]n order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or

_____

[2]  Paragraph 58 of the Complaint states in pertinent part, "As a direct and proximate result of the above-referenced intentional, systematic and continuous misconduct of Defendants County, KFD, Sproat, Kaden, Kini, and Sage committed under color of law....Plaintiff was deprived of his constitutional rights, including but not limited to...freedom of speech in violation of the First [Amendment]."

18

her speech was a 'substantial or motivating' factor for the adverse employment action." Id. at 973 (citations omitted).

"An employee's speech is protected under the First Amendment if it addresses 'a matter of public concern.'" Id. at 973 (citation omitted). Speech concerning information that would enable members of society to make informed decisions about the operation of government should receive the most protection, while speech relating to "individual personnel disputes and grievances" that would be of "no relevance to the public's evaluation of the performance of government agencies" is not generally of public concern. See McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983). The court should look to the content, form, and context of the speech to determine whether it deals with an issue of public concern. See Connick v. Myers, 461 U.S. 138, 147 (1983).

With respect to the second element, the Ninth Circuit clarified that an adverse employment action is an action "'reasonably likely to deter employees from engaging in protected activity.'" Coszalter, 320 F.3d at 976-77 (citation omitted). With respect to the third element, the Ninth Circuit has considered the following in evaluating the whether a plaintiff's protected speech was a substantial or motivating factor behind a defendant's adverse employment action: (1) evidence of proximity in time between the protected action and the allegedly retaliatory

19

employment decision; (2) evidence that the employer expressed opposition to his speech, either to him or others; and (3) evidence that his employer's proffered explanations for the adverse employment action were false or pretextual. <u>Keyser v. Sacramento City Unified School District</u>, 265 F.3d 741, 751-52 (9th Cir. 2001),

        While Plaintiffs cite numerous examples of Ragasa's alleged protected speech and alleged retaliatory actions taken by Defendants, the Court finds the following allegations most relevant to this Motion: (1) Ragasa engaged in protected speech with respect to the training and certification procedures of open water training by requesting that Kini produce documentation to show he was certified to train him; (2) In the summer of 2001, Kaden stated that he was having problems with Ragasa and wanted to fire him; (3) Ragasa signed a survey for publication on December 28, 2001 indicating that Kaden should not be involved in any way with the water safety program; (4) Ragasa signed a survey for publication on December 28, 2001 indicating that he did not feel that firemen should be training lifeguards on ocean safety; (5) in January 2002, Kaden stated on at least four occasions at the KFD headquarters, "F-Carl! I'm going to get him fired!"; (6) On August 29, 2003, Ragasa wrote a letter to the USLA criticizing the way in which the KFD was running the water safety program; and (7) in late March 2005, KFD Chief Westerman falsely accused Ragasa of theft by deception and

defrauding his time records, and of being a substance abuser and a chronic alcoholic, forcing him to take leave without pay under the pretense of having to take care of a substance abuse problem he never had.

County Defendants argue that Ragasa did not engage in protected speech because his statements did not involve a matter of public concern.  County Defendants assert that "the only mention of a claim related to speech arises out of [Plaintiffs'] allegations that Employee Defendants formed a belief that Ragasa was going to report their alleged illegal actions to the authorities and thus engaged in a conspiracy to have him terminated and to damage his reputation within the community."  County Defendants submit that because Ragasa has not produced evidence that he ever told anyone about these alleged wrongdoings his claim that he engaged in protected speech fails.  Further, County Defendants argue that Ragasa's self-serving declaration in which Ragasa indicates that he criticized Kaden and Kini's job performance are personnel matters rather than matters of public concern.  Next, County Defendants argue that no "adverse employment actions" were taken against Ragasa since (1) his arrest alone is not conduct which is sufficiently egregious to chill an individual's speech in violation of the First Amendment; (2) receiving paid time off is not an adverse employment action; and (3) verbal threats and "badmouthing" are not adverse employment actions.  Finally,

County Defendants claim that Plaintiffs cannot show that Ragasa's speech was the substantial or motivating factor for the alleged adverse employment actions taken by County Defendants because there is no nexus between Ragasa's protected speech and his subsequent arrest since the police officers had no knowledge of Ragasa's concerns.

In applying the standard set forth in <u>Coszalter v. City of Salem</u>, 320 F.3d 968, and viewing the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have produced sufficient evidence to survive summary judgment on their claim for First Amendment retaliation. First, the Court finds that the following allegations, if proven, would constitute protected speech for purposes of Plaintiffs' First Amendment retaliation claim: (1) the statements made by Ragasa criticizing how Kaden and Kini were running the water safety program; (2) the two surveys signed by Ragasa; and (3) the letter written by Ragasa to the USLA criticizing how the KFD was running the water safety program. The Court finds that Plaintiffs have produced sufficient evidence for a jury to find that these were matters of public concern, since the activities are related to public water safety. Next, the Court finds that Plaintiffs have produced sufficient evidence for a jury to find that County Defendants took "adverse employment actions" against Ragasa. In viewing the facts in the light most favorable to Plaintiffs, the Court

finds that Plaintiffs' allegations that Kaden repeatedly stated he wanted to fire Ragasa, coupled with Ragasa's arrest and the subsequent false accusations made against Ragasa, could constitute an adverse employment action for purposes of a First Amendment retaliation claim. Finally, Plaintiffs have presented sufficient evidence for a jury to find that Ragasa's protected speech activity was a "substantial or motivating" factor for the adverse employment action. Here, the alleged adverse employment actions taken against Ragasa were ongoing and were not part of an isolated incident. Plaintiffs have produced evidence that Kaden expressed a desire to have Ragasa fired around the same time that Ragasa was engaging in protected free speech activities. In addition, Plaintiffs have produced sufficient evidence for a jury to find that the statements made to police by Kini and Sage could have been in an effort to retaliate against Ragasa, rather than being made out of a genuine fear of safety as they claim. Thus, the Court concludes that Plaintiffs have produced sufficient evidence for a jury to find that the retaliatory actions taken against him by County Defendants were motivated by Ragasa's protected speech activities. Consequently, the Court DENIES County Defendants' Motion with respect to Plaintiffs' Section 1983 claim based on First Amendment retaliation.

2.    <u>Other Constitutional Claims</u>

Plaintiffs base their Fourth, Eighth, and Fourteenth Amendment claims on Ragasa's alleged false arrest. The Court has already determined that Defendants were not acting under color of law for purposes of Plaintiffs' Section 1983 claims based on Ragasa's alleged false arrest. Therefore, Plaintiffs' Section 1983 claims based on violations of the Fourth, Eighth, and Fourteenth Amendments fail as a matter of law and Court need not address these constitutional claims.

C.    <u>Municipal Liability</u>

The Supreme Court has held that a municipality is liable under Section 1983 "when execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury..." <u>Monell v. Dep't of Social Servs.</u>,  436 U.S. 658, 694 (1978).  In order to establish municipal liability, a plaintiff must demonstrate a causal relationship between the municipal policy and the wrong suffered by the plaintiff.  <u>Id.</u>  A municipality cannot be held liable for the tortious acts of government employees under a theory of respondeat superior.  <u>See</u> <u>Meehan v. County of Los Angeles</u>, 856 F.2d 102, 106-07 (9th Cir. 1988).

24

Plaintiffs argue that the County of Kauai ("the County") and the KFD had a policy and custom of ignoring USLA training certification requirements and that it "so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Additionally, Plaintiffs allege that the County had a policy of ignoring the criminal activities of County Defendants Sproat, Kaden, and Kini.

County Defendants argue that the only custom referred to by Plaintiffs is one of ignoring USLA training requirements. County Defendants rebut Plaintiffs' claim by referencing the USLA letter sent in response to Ragasa's complaint which stated, "the National Conference Committee discussed the complaint in detail and concluded that the Kauai Fire Department has appropriately followed the requirements of the USLA lifeguard agency certification program, and based on all information available to us, remains in compliance." Given that Plaintiffs have failed to produce evidence other than Ragasa's mere accusation that such a policy existed, Plaintiffs have failed to produce sufficient evidence to create a genuine issue of material fact as to whether the County and the KFD had a policy of ignoring USLA guidelines. With respect to Plaintiffs' allegations of Sproat, Kaden, and Kini's alleged criminal activities, County Defendants argue that Plaintiffs have failed to prove that the County was even aware of such activities, let

25

alone had an official policy of condoning them.  Even assuming arguendo that such

a policy did exist, Plaintiffs have not produced any evidence to show that there was

any causal connection whatsoever between the existence of this alleged policy and

the alleged harm suffered by Plaintiffs.  Consequently, the Court finds that

Plaintiffs have failed produce sufficient evidence to support their claim of

municipal liability and GRANTS County Defendants' Motion on Plaintiffs' claims

against Defendants County of Kauai and the KFD.

> D.     Qualified Immunity

Defendants argue that even if Plaintiffs could show that Sproat,

Kaden, and Kini were acting "under color of law" in making their reports to the

police, Defendants are nonetheless entitled to qualified immunity.  The doctrine of

qualified immunity bars claims against state officials acting in their official

capacities. See Harlow v. Fitzgerald, 457 U.S. 800 (1982).  To overcome the

presumption of qualified immunity, a plaintiff must show that the defendant

violated any "clearly established federal statutory or constitutional rights of which

a reasonable person would not have known."  Id. at 818.

The Court must determine if Plaintiffs have overcome the

presumption of qualified immunity with respect to County Defendants Sproat,

Kaden, and Kini.  The Court has already determined that Plaintiffs have produced

26

sufficient evidence to proceed on their Section 1983 claim based on First Amendment retaliation. The rights guaranteed by the First Amendment are clearly established and well-known. Therefore, County Defendants Sproat, Kaden, and Kini are not entitled to qualified immunity.

## II.  Conspiracy

In Count III of the Complaint, Plaintiffs allege that "the aforesaid acts and conduct of Sproat, Kaden, Kini, and Sage constitute a conspiracy among them." In Plaintiffs' Opposition, they assert that their constitutional claims stem from a conspiracy driven by Kaden's desire to have Ragasa fired. Plaintiffs' Exhibits E-H, which Plaintiffs refer to as the "Sage Conspiracy Exhibits," contain unsworn statements made by Sage indicating that Kaden coerced him into making false statements to the police. According to Sage's statement contained in Exhibit H, Kaden told Sage that things would get worse if he did not agree with the statement that Kini made to the police regarding the incident on March 22, 2002.

County Defendants argue that Plaintiffs have not produced any evidence that a conspiracy existed. County Defendants state that Ragasa admitted that he was unaware of any meeting nor had he heard of any meeting among Sproat, Kaden, Kini, and Sage to devise a plan to have him terminated.

In general, conspiracy is a concerted action by two or more persons to accomplish a common plan or design by unlawful means. Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Co., Inc., 982 P.2d 853, 91 Haw. 224 (1999). See also Doleman v. Meiji Mutual Life Insurance Co., 727 F.2d 1480 (9th Cir. 1984). To establish a conspiracy claim under Section 1983, Plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F. 2d 1539, 1540-41 (9th Cir.), cert. denied, 534 U.S. 1020 (2001). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Id. at 1541.

In viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have not submitted sufficient evidence for a jury to find the existence of the Section 1983 conspiracy. Plaintiffs have not produced any evidence that an agreement was reached to deprive Ragasa of his constitutional rights. Even if Kaden did instruct Sage to make false statements to police as Plaintiffs assert, Plaintiffs have not presented evidence that Kaden, Kini, and Sage formulated an agreement to engineer a false arrest in order to have Ragasa fired. Furthermore, in Sage's deposition testimony, Sage denies that either Sproat or Kaden coerced him into making any statements. Moreover, even Sage's

28

recantation of his testimony does not demonstrate that he ever intended to agree to have Ragasa falsely arrested.  Without any evidence of such an agreement, Plaintiffs' Section 1983 conspiracy claim fails as a matter of law.  Accordingly, the Court GRANTS County Defendants' Motion as to Plaintiffs' conspiracy claim.

III. Respondeat Superior

In Count IV of the Complaint, Plaintiffs allege that "Defendants County and the KFD, as the employer of Defendants Sproat, Kaden, Kini and Sage are liable under the doctrine of respondeat superior for the negligence of Defendants Sproat, Kaden, Kini, and Sage."  In Plaintiffs' Opposition, they claim that the County and KFD knew of and condoned the wrongful actions taken against Ragasa.

The Court has already determined that neither Defendant County nor Defendant KFD are liable for Plaintiffs' Section 1983 claims based on the absence of any unconstitutional policy or custom.  As previously stated, a municipality cannot be held liable for the tortious acts of government employees under a theory of respondeat superior. See Meehan, 856 F.2d 102, 106-07 (9th Cir. 1988). Consequently, the Court GRANTS County Defendants' Motion as to Plaintiffs' respondeat superior claim.

IV.    Emotional Distress Claims

      In Counts V and VI of the Complaint, Plaintiffs allege that Sproat, Kaden, Kini and Sage are liable for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively.  County Defendants argue that Plaintiffs' emotional distress claims are barred by Hawaii's Workers' Compensation law which provides the exclusive remedy for injuries that arise out of and during the course of employment.

      Hawaii's Workers' Compensation Statute provides that "[t]he rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee...on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought." Haw. Rev. Stat. §386-5.  The statute covers "personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment..."  Haw. Rev. Stat. §386-3.

      In Ellison v. Northwest Airlines, Inc., 938 F. Supp. 1503 (D. Haw. 1996), the court addressed the issue of whether H.R.S. §386-5 bars a plaintiff's actions against his employer for emotional distress.  The court stated, "no claim of

30

work related infliction of emotional distress is viable outside the exclusivity bar of H.R.S. §386-5 unless it is 'related to' sexual harassment or sexual assault....H.R.S. §386-5 bars all of Plaintiff's negligent or intentional infliction of emotional distress claims against [Plaintiff's employer] and against [Plaintiff's supervisor] for conduct within the scope of his employment." Id. at 1514-15.

With respect to actions brought by one coworker against another individually, however, H.R.S. §386-68 provides that "'[a]nother employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct.'" Id. at 1515. Hawaii courts have held that this provision preserves a plaintiff's right of action in common law or under another statute against a fellow employee individually and "clearly allows an employee to sue a fellow employee for damages resulting from an injury caused by the fellow employee's willful and wanton misconduct." Id. (citation omitted).

The Court has determined that Plaintiffs' First Amendment retaliation claims arose out of alleged conduct that occurred within the scope of Ragasa's employment. Therefore, the Court considers Plaintiffs' emotional distress claims to be work-related injuries for the purposes of the Hawaii Workers' Compensation Statute. Consequently, Plaintiffs' emotional distress claims against

31

County Defendants, his employers, are barred by H.R.S. §386-5.  However, Plaintiffs may have presented sufficient evidence to survive summary judgment on their claim for intentional infliction of emotional distress against Defendant Sage individually, since Sage is Ragasa's coworker.

In order to establish a claim for intentional infliction of emotional distress in Hawaii, a plaintiff must show: (1) that the act allegedly causing the harm was intentional or reckless; (2) that the act was outrageous; and (3) that the act caused (4) extreme emotional distress to another.  Hac v. University of Hawaii, 73 P.3d 46, 60 (Haw. 2003).  Here, Plaintiffs have not produced any evidence that Ragasa has suffered extreme emotional distress as a result of Sage's actions.  Plaintiffs have only made a mere allegation that he has suffered such distress.  This, without more, is not sufficient to survive summary judgment. See Id. at n.22 ("[a]ll courts require some kind of evidence of severe distress.").  Consequently, the Court GRANTS summary judgment on Plaintiffs' emotional distress claims.

V.     False Imprisonment

In Count VII of the Complaint, Plaintiffs allege that Ragasa was falsely imprisoned.  In order to establish a claim or false imprisonment, a plaintiff must show: "(1) the detention or restraint of one against his [or her] will, and (2) the unlawfulness of such detention or restraint."  Reed v. City and County of

<u>Honolulu</u>, 973 P.2d 98, 109 (Haw. 1994)(citations omitted).  The determination of probable cause is a defense to a claim for false imprisonment. <u>See</u> <u>Id.</u> (citations omitted).

County Defendants argue that Plaintiffs have failed to establish the unlawfulness of Ragasa's arrest.  Since there was probable cause for Ragasa's arrest, Defendants maintain that Ragasa cannot establish his claim of false imprisonment.

In viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have, at best, produced evidence that Defendants set a process in motion that caused Ragasa to be falsely arrested.  Plaintiffs do not allege that Defendants themselves unlawfully detained Ragasa.  The Court finds that Plaintiffs' false imprisonment claim fails because the proper defendants for Plaintiffs' false imprisonment claim would have been the police officers who were directly responsible for arresting and detaining Ragasa, rather than the named Defendants. Therefore, the Court GRANTS County Defendants' Motion with respect to Plaintiffs' false imprisonment claim.

33

VI.    Defamation

        In Count VIII of the Complaint, Plaintiffs allege defamation.  To

establish a claim for defamation in Hawaii, a plaintiff must establish the

following:

>        (a) a false and defamatory statement concerning another;
>        (b) an unprivileged publication to a third party;
>        (c) fault amounting at least to negligence on the part of
>        the publisher; and
>        (d) either actionability of the statement irrespective of
>        special harm or the existence of special harm caused by
>        the publication.

Beamer v. Nishiki, 670 P.2d 1264, 1271 (Haw. 1983) (quoting Restatement

(Second) of Torts § 558 (1977)).

        In some instances, a the existence of a privilege will shield a

defendant from liability for defamation.  "A qualifiedly privileged occasion arises

when the author of the defamatory statement reasonably acts in the discharge of

some public or private duty, legal, moral, or social, and where the publication

concerns subject matter in which the author has an interest and the recipients of

the publication a corresponding interest or duty.  Lauer v. Young Men's Christian

Ass'n, 557 P. 2d 1334, 1338 (Haw. 1976)(citations omitted).

        Plaintiffs argue that Defendants Sproat, Kaden, Kini and Sage

knowingly made and published false accusations and information about Ragasa to

34

members of the KPD and other persons falsely accusing Ragasa of criminal harassment.  Plaintiffs further allege that these statements were made with reckless disregard for the truth and with malice.  County Defendants argue that the statements that Kini and Sage made to police were true statements.  In addition, County Defendants assert that these statements constitute a privileged publication to a third party and are not actionable.  Finally, County Defendants argue that under Hawaii law, a qualifiedly privileged occasion arose in this case. County Defendants argue that the public interest exception applies here because Kini and Sage had an interest in protection themselves from harassment by Ragasa and they had a duty to prevent violence in the workplace.

In order to succeed on their defamation claim, Plaintiffs must first present sufficient evidence for a jury to find that the statements made by Defendants were false and defamatory.  First, the Court finds that Plaintiffs have introduced some evidence for a jury to find that Kini and Sage may have made false statements to the police.  Second, if Defendants Kini and Sage knowingly made false statements to the police, that would not constitute a protected qualifiedly privileged occassion.  Plaintiffs have presented sufficient evidence to create a genuine issue of material fact as to whether Kini and Sage were at least negligent in making the statements to police.  With respect to Kaden, Plaintiffs

have produced some evidence for a jury to find that Kaden made defamatory remarks about Ragasa to others in the workplace. With respect to Sproat, Plaintiffs have failed to introduce any evidence that Sproat made defamatory statements about Plaintiff to a third party. Finally, the Court finds that Plaintiffs have presented sufficient evidence to survive summary judgment based on their assertion that Ragasa's reputation in the community has been damaged because Kauai is a small community. Consequently, the Court finds that Plaintiffs have produced sufficient evidence to withstand a motion for summary judgment and DENIES County Defendants' Motion as to Plaintiffs' defamation claims against Kaden, Kini and Sage, and GRANTS summary judgment as to Sproat.

VII.    Malicious Prosecution

        In Count IX of the Complaint, Plaintiffs allege that Defendants "made and caused to be filed false statements to members of the Kauai Police Department without any probable cause thereby causing and initiating criminal legal proceedings against Plaintiff." Plaintiffs assert that a jury could find that Sage and Kini lied to the police when they made their reports on March 27, 2002, and thus the proceedings were initiated with malice and without probable cause. County Defendants argue that Plaintiffs' claim fails because (1) the termination of prior proceedings were under questionable circumstances; (2) there was probable

36

cause to initiate the proceedings against Ragasa; and (3) there is no evidence that Defendants initiated the proceedings with malice or for a purpose other than bringing Ragasa for justice for his threats of violence in the workplace.

Plaintiffs must prove the following elements to prevail on a malicious prosecution claim:

> (1) that the prior proceedings were terminated in the plaintiffs' favor;
> (2) that the prior proceedings were initiated without probable cause; and
> (3) that the prior proceedings were initiated with malice.

Myers v. Cohen, 688 P.2d 1145, 1151 (1984). Similar to Plaintiffs' false imprisonment claim, Plaintiffs' malicious prosecution claim fails because Defendants were not the parties directly responsible for prosecuting Ragasa. Therefore, the Court GRANTS County Defendants' Motion as to Plaintiffs' malicious prosecution claim.

VIII.  Conclusion

For all of the aforementioned reasons, the Court GRANTS County Defendants' Motion as to all Counts with respect to Defendants County and KFD; GRANTS County Defendants' Motion as to Counts II, III, IV, V, VI, VII, and IX with respect to Defendants Sproat, Kini, and Kaden; GRANTS County Defendant's Motion as to Count VIII as to Defendant Sproat; DENIES County

37

Defendants' Motion as to Counts I and VIII as to Defendants Kini and Kaden;

DENIES County Defendants' Motion with respect to Count I as to Defendant

Sproat; GRANTS summary judgment as to Defendant Sage with respect to Counts

I, II, III, IV, V, VI, VII, and IX and DENIES summary judgment as to Defendant

Sage with respect to Count VIII, as stated herein.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
 Dated: March 22, 2006

CIVIL NO. 03-00540 BMK; CARL RAGASA AND KANANI RAGASA v. COUNTY OF KAUAI, KAUAI FIRE DEPARTMENT, DAVID SPROAT, ROBERT KADEN, SIDNEY KINI AND ETHAN SAGE; ORDER REQUESTING ADDITIONAL BRIEFING